RUBY GRAY, Plaintiff-Appellant, *v.* MARVIN GRAY, Defendant-Appellee.

First District (5th Division)   No. 76-1167

Opinion filed January 13, 1978.

Freda R. Merrett, of Chicago, for appellant.

Marvin W. Gray, of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

The parties to this appeal had been divorced on June 22, 1973, which decree granted Ruby Gray custody of the minor child, Jason, and granted Marvin Gray reasonable visitation rights. The present matter arises out of the filing of cross-petitions in July of 1976 for modification of the divorce decree. Marvin Gray sought to have custody of Jason transferred to him, while Ruby Gray sought the permission of the court to remove Jason from Illinois to California. The court entered an order denying both petitions and striking that portion of a previous order of the court granting attorney's fees to counsel for Ruby Gray. This appeal is taken from the order denying permission to relocate the minor child and the order striking attorney's fees. No appeal is taken from the denial of Marvin Gray's petition for a change of custody. The pertinent facts follow.

Marvin Gray filed his petition for a change of custody on July 1, 1976, alleging therein Ruby Gray's imminent move to California, her failure to make appropriate housing, educational and child care plans for Jason in connection with the move, and Jason's desire to remain in Chicago. The petition also included Jason's latest school evaluation showing his favorable educational progress at the Francis W. Parker Elementary School. On the date of filing the petition a hearing was held at which Ruby indicated she was soon to go to California and would, upon her return, be better able to answer the petition's allegations. A hearing was set for July 22.

On that date, following her return from California, Ruby filed an answer to the petition for change of custody, and filed her own petition for permission to remove Jason to California. Hearings on the cross-petitions were held between July 22 and August 5, 1976.

Marvin Gray testified that he was an attorney in private practice in Chicago, and that he had also practiced law in Galesburg, Illinois, from October of 1974 to February of 1976. In August of 1974 he married his present wife, Marie, and they had two children, one by her previous marriage. Prior to moving to Galesburg he regularly saw Jason on

weekends. After moving to Galesburg he saw Jason less frequently, perhaps once a month, visiting occasionally during business trips to Chicago. In addition, Jason came to Galesburg during the summer of 1975 for an extended stay of approximately five weeks. He indicated that a warm relationship existed between Jason and all the members of the new Gray family.

Marvin further testified that in June of 1976 he had a conversation with Ruby concerning her plans to move to California. He expressed unhappiness and disapproval of Ruby's intention to take Jason to California without her having made definite housing, educational and child care facility arrangements beforehand, and asked her to make such arrangements before the actual move. Marvin also suggested that Ruby leave Jason with him for the ensuing academic year, while she established roots in California and made the necessary arrangements for Jason to follow her. She rejected the idea.

Ruby Gray testified that since the divorce she had worked at several jobs in order to support herself and Jason. Each successive job provided an increase in salary. She had also pursued her college education and was finishing a master's degree. At the time of the hearing she was unemployed; however, she was seeking to move to California because she had obtained employment as the director of a YMCA program in Los Angeles. She would start work in August of 1976.

Ruby also stated that she had visited California a number of times prior to her being considered for the YMCA position. In 1975 Jason accompanied her on one such trip and made friends with two young boys whom he had not seen since. Ruby also had several cousins in California, but had only visited one during her trips to California. She conceded that her California relatives were not particularly close.

Ruby had visited California from July 8 through July 10 in order to arrange for the housing, schooling, and child care needs of her family, in response to the allegations contained in Marvin's petition for a change of custody. During this visit she signed an agreement to secure a two-bedroom apartment in a three-year-old complex called Tara Hill, in Culver City, California. She selected the Culver City area because it had been recommended by three residents of the area as a middle to upper-middle class community with an excellent school system. Tara Hill has an after-school child care facility for children of Jason's age. The child center would be available from 3 p.m. to 6 p.m. each school day.

Ruby also made inquiries concerning private schools in that area. She was referred to two private schools, the Oakwood and Westland Schools, by individuals who had children attending those schools. Ruby ascertained that there were fifth grade openings in both schools for the coming year. She was unable to speak with the headmaster at Westland,

but did speak with the Oakwood principal for 20 minutes on the phone. While she had not completed any applications for Jason to enter these schools, Oakwood had told her that she could wait until the first week of August to formally apply. Public schools would not require any application.

Concerning her new job, Ruby stated that her working hours were not yet positively known. However, she had made arrangements with the YMCA that she would not have to work past 5 p.m. more than two nights per month. In addition, while her job would start on August 1, she would not have to report to an office on a daily basis until August 22. During that three-week period she would only have to report to an office one day per week. The rest of that period she and Jason would be together, familiarizing themselves with the area. Ruby admitted, however, that Jason had expressed a desire to remain at the Francis Parker School.

The trial court directed that the child be brought to court, and after an *in camera* conversation between the trial judge and Jason, the court made the following pronouncement:

> "Let the record show that based on the testimony herein presented and after the Court having an in-chambers discussion with Jason, * * * the Court feels that the best interest of the child, Jason, in order for him to continue with his education at Francis Parker School that it is incumbent upon this Court to deny the petition of the plaintiff, Ruby, to remove the child from this jurisdiction."

The court further stated that no sufficient showing existed for a change of custody, and thus custody remained in Ruby. An order was then entered on July 30 denying both petitions.

On August 4 the court entered an order granting Ruby permission to take Jason to California for a visit on August 5, but requiring Jason to be returned to Marvin Gray's physical custody in Chicago on September 10. The court also ordered that Jason be allowed to visit Ruby during the spring break of 1977 at her own expense, and ordered that Marvin Gray pay Ruby's attorney's fees in the amount of $250. The order granting attorney's fees was later stricken.

OPINION

The first contention raised on appeal is that the trial court abused its discretion in denying Ruby Gray's petition for removal of Jason to California. We agree.

■■ The law permits removal of a child to another State, by the parent having custody, where such removal is in the best interests of that child. (*Garland v. Garland* (1974), 19 Ill. App. 3d 951, 312 N.E.2d 811; Ill. Rev. Stat. 1975, ch. 40, par. 14, subsequently repealed and replaced by act

approved September 22, 1977, see Pub. Act. 80-923, §§609, 901 (eff. Oct. 1, 1977).) A determination by the trial court as to what serves the best interests of the child will not be held error on appeal unless it is against the manifest weight of the evidence. (*Hickey v. Hickey* (1975), 31 Ill. App. 3d 257, 333 N.E.2d 271.) We conclude that the trial court so erred in the instant case.

■■ The most recent cases decided by this court indicate that where one of two parents has been awarded custody of the parties' child and there is no showing that that award is against the child's best interests, a court should not oppose removal of the child from Illinois unless there is a specific showing that the move would be against the child's best interests. (*Tandy v. Tandy* (1976), 42 Ill. App. 3d 87, 355 N.E.2d 585; *Garland v. Garland; Spencer v. Spencer* (1971), 132 Ill. App. 2d 740, 270 N.E.2d 72.) These holdings "reflect that it is generally in a child's best interest to remain with the parent in whose custody the court has determined to place it." (*Tandy v. Tandy* (1976), 42 Ill. App. 3d 87, 90, 355 N.E.2d 585, 587.) In the instant case there is no showing that Ruby should not retain custody of Jason. The trial court specifically ruled that custody would remain unchanged. Thus, in the absence of a showing that it would be against Jason's best interests to remove him to California, the court should have granted Ruby's petition.

Concerning Ruby's proposed move to California, the evidence revealed that she had made arrangements concerning both housing and child care facilities. While her working hours were not definite, she had arranged not to work past 5 p.m. more than two nights a month. Clearly, therefore, on most days Jason could be at the child center until Ruby arrived home. In addition, assuming she did work late there is no evidence to indicate a reasonable belief that Ruby would not make appropriate arrangements for Jason. She had made such arrangements here in Chicago for when she was late, which allowed Jason to be watched for and let into their apartment. Nothing in these facts indicates that it would work against Jason's best interests for him to move to California.

■■ The court in the instant case apparently based its decision solely upon its desire to see Jason continue at the Francis Parker School. While certainly schooling could be a basis upon which to deny a petition for removal, we find that the evidence in the instant case concerning schools was insufficient to justify such a denial.

Ruby had inquired concerning schools in the area of her proposed residence. Two schools had been particularly recommended to her as excellent by parents of children within those schools. Ruby had determined that both schools had vacancies for Jason's grade in the coming year, and the Oakwood School allowed her through the first week

in August to make formal application for Jason's admittance. There was no showing that these schools were inferior and could not provide Jason with an education similar in quality to that he was obtaining at Francis Parker. Neither was there any showing that Jason required certain facilities or programs which only existed at Francis Parker. Therefore, we must conclude that based on this record the trial court's determination that Jason's best interests were served by his remaining at Francis Parker, rather than continuing his daily life with his mother in California, was against the manifest weight of the evidence.

While we recognize that Jason wished to continue at Francis Parker, this is not a controlling factor. It is natural that a child of 10 would prefer not to leave his school and friends, but this preference would only be appropriately considered where based on reasons related to the child's best welfare. (*Garland v. Garland.*) In this case Jason's preference does not affect the aforementioned presumption that his best interest lies in his remaining with his mother, who was granted custody by court order.

■■ We also recognize that Jason has a warm relationship with his father. While his removal to California will affect their ability to continue this relationship on its present basis, adequate visitation provisions can be made and reasonable security ordered posted to insure compliance with such provisions. (Pub. Act. 80-923, §609 (eff. Oct. 1, 1977).) In addition, the visitation difficulties of the noncustodial parent are not alone sufficient to deny a petition for removal. See *Tandy v. Tandy.*

In sum, no showing was made that Jason would suffer in any respects, educational or otherwise, by going to California to live. We agree with the statement of the court in *Spencer v. Spencer* (1971), 132 Ill. App. 2d 740, 743, 270 N.E.2d 72, 74, that:

> "A man is entitled to take advantage of economic opportunity, whether he be employed by a company or as a sole proprietor of his own business. He has a right to move around wherever his best opportunities for livelihood may be found and, of course, to have his family with him."

While the *Spencer* court was referring to the husband of the remarried petitioner, we see no reason why this analysis should not be applicable in the instant case to petitioner's own ability to take advantage of economic opportunity. Thus, in the absence of a showing of an effect adverse to Jason's best interests, we conclude that the trial court erred in denying Ruby's petition for removal of Jason to California.

The second contention raised on appeal is that the trial court improperly struck its order granting attorney's fees. On August 4 the court entered an order which, among other things, granted appellant's motion for attorney's fees. Following the granting of said motion appellee, Marvin Gray, requested the court's permission to leave briefly so that he

might obtain some papers from his office for purposes of appeal. He indicated he would return to court shortly. A recess was had, after which court reconvened with only Marvin Gray present. Counsel for appellant had left during the recess and had not returned. The court then acted upon a motion for reconsideration made by appellee, and entered an order striking that part of its previous order relating to the grant of attorney's fees. Counsel for appellant contends that this latter order was null and void since she had received no notice that the motion to reconsider was being made. (See *Wilson v. Moore* (1973), 13 Ill. App. 3d 632, 301 N.E.2d 39; *Vlahakis v. Parker* (1971), 3 Ill. App. 3d 126, 278 N.E.2d 523 (abstract opinion).) We disagree.

■■ We recognize that where statutes or rules so specify, or where principles of natural justice so require, an adverse party must be given notice that a motion will be presented to the court. (*Vlahakis v. Parker.*) However, the instant case is distinguishable from the aforementioned cases. Both *Wilson* and *Vlahakis* apparently involved written motions, and thus were governed by statutory filing and notice provisions. (Ill. Rev. Stat. 1971, ch. 110A, par. 104(b).) In addition, both involved motions made after a substantial time period had passed following entry of the original court order. In the case at bar, however, no written motions were involved and the oral motion was made on the same day, at the same hearing, in which the order being modified was entered. The court had recessed, indicating it would reconvene. The hearing had not yet been terminated by the court. Thus, we feel that under these facts the applicable rule is that both parties are bound to be in court and are charged with knowledge that any proper order or motion may be made at any time, in the absence of a rule excusing attendance unless notice is given. (*Calbreath v. Beckwith* (1930), 260 Ill. App. 7; *Hickman v. Ritchey Coal Co.* (1929), 252 Ill. App. 560.) In this case the absence of counsel for appellant had not been so excused, and we are directed to no rule or statute which would so excuse her. We find therefore that the trial court acted properly in the instant case, and its order striking the previous grant of attorney's fees was not invalid for lack of notice.

Even assuming *arguendo*, however, that notice was required before appellee's motion could be considered, we find that appellant was not prejudiced by the procedure in the instant case. Counsel for Ruby Gray appeared before the court on August 5, after receiving notice of the order striking attorney's fees. At that point she had a hearing on the merits of the order, discussing with the court its reasons for striking the grant of attorney's fees. The court then reaffirmed its decision not to allow such fees. Under these facts we find no prejudice to defendant arising from any alleged lack of notice. See *Verst v. Foreman-State Trust & Savings Bank* (1933), 270 Ill. App. 484.

Appellant does not argue the merits of the trial court's decision regarding fees on appeal. Rather, she apparently relies on the alleged invalidity of the order denying fees to revive the previous order awarding fees. We have already rejected this position; however, we would also comment briefly upon the substance of the court's decision in this regard.

■■ A determination concerning the allowance of attorney's fees in postdecree proceedings to modify provisions of a divorce decree rests in the sound discretion of the trial court and will not be disturbed on review absent an abuse of said discretion. (*Kuhns v. Kuhns* (1972), 7 Ill. App. 3d 884, 288 N.E.2d 884.) Allowance of such fees depends on the unique circumstances of each case and a proper consideration is what circumstances required the initiation of judicial proceedings. (*Kuhns v. Kuhns.*) In this case, as noted by the trial court in its discussion with appellant's counsel on August 5, it was Ruby Gray's desired move to California which generated all of the instant proceedings. On this basis, therefore, the court properly denied her request for attorney's fees. *Kuhns v. Kuhns*; see also *Temple v. Temple* (1977), 52 Ill. App. 3d 851, 368 N.E.2d 192.

For the reasons stated the order of the circuit court of Cook County denying Ruby Gray's petition for removal of Jason to California is reversed, and the cause is remanded with directions to allow the petition for removal and for further proceedings not inconsistent herewith to provide appropriate visitation privileges for Marvin Gray, and to reasonably assure compliance by each of the parties relative to the foregoing matters. The order of the circuit court striking its previous grant of attorney's fees to Ruby Gray is affirmed.

Affirmed in part; reversed in part, and remanded with directions.

SULLIVAN, P. J., and LORENZ, J., concur.