THOMAS J. GALLAGHER, Plaintiff-Appellant, v. JEANETTE T. GALLAGHER, Defendant-Appellee.

First District (4th Division)   No. 76-123

Opinion filed May 4, 1978.

Friedman, Armstrong & Donnelly, of Chicago, for appellant.

Kirsh, Nadler & Berman, of Chicago (Arthur M. Berman and J. Scott Bonner, of counsel), for appellee.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

This action involved a petition by the plaintiff father to modify a judgment for divorce by transferring to him the principal place of residence of the 8-year-old daughter of the parties whose custody had been awarded jointly to them. The defendant mother filed a counterpetition to modify the judgment for divorce, insofar as it prohibited removal of the child from Illinois, to allow her to change the child's residence to Colorado. The trial court ordered the joint custody terminated and granted permanent custody to the mother with the right to remove the child to Pueblo, Colorado. The father appeals, and we affirm.

The appellant contends that the trial court erred in terminating the joint

custody and granting permanent, sole custody to the appellee with the right to remove the child from the jurisdiction.

After a stipulated hearing, the parties were divorced on April 11, 1974, after 9 years of marriage. The judgment incorporated an agreement which provided for joint custody of their only child, Brigid, born April 28, 1967. The judgment also provided that Brigid reside with her mother 5 days per week and with her father on weekends, holidays, and 2 weeks in the summer. Removal of the child from the jurisdiction of the circuit court of Cook County was expressly prohibited. Defendant Jeanette Gallagher has not remarried and continues to reside in the same apartment on south Everett in Chicago where she lived at the time of the divorce. She has changed employment from receptionist to bookstore manager but earns the same salary. She does occasional music criticisms for neighborhood newspapers. It has been her ambition to critique music as a career.

When Jeanette separated from her husband in September 1973, she rented a room for herself and Brigid at the home of Julia Zacharopulos, a widow with two children. During this separation, plaintiff husband became acquainted with Julia and married her shortly after the divorce. Plaintiff Thomas Gallagher has been employed by a construction firm for several years, and after the divorce, he purchased and remodeled a home on south Kenwood in the city- of Chicago, and a separate bedroom is maintained for Brigid. Thomas has adopted Julia's minor sons, and they all appear to get along well together. Julia has a master's degree in education, but she is not employed and can devote all of her time to the care of the children. She welcomes the responsibility of caring for Brigid and has a good relationship with her. Thomas has adhered closely to the prescribed visitation times with only normal variations effectuated by agreement between the parties. Jeanette, for example, left Brigid with Thomas for a month during the summer of 1974 instead of 2 weeks in order to attend a music function in Mexico.

Neither party has experienced discipline or health problems with Brigid, and everyone agrees that she is a healthy child who has flourished in all aspects of her development.

Jeanette first considered moving from Illinois in March 1975, approximately 13 months after the entry of judgment for divorce. In June 1975, she informed Thomas of her desire to move to Pueblo, Colorado, where her parents and two brothers reside. She requested Thomas' consent but he refused. At the hearing on the petitions, Jeanette testified to numerous factors underlying her desire to relocate at Pueblo, Colorado. Principally, she believed that Pueblo would afford her and Brigid a qualitatively better life and environment. At trial, both Jeanette and Thomas expressed concern about the Chicago neighborhood in

which Jeanette and Brigid had lived since February 1974. They described it as being "unsuitable" and "dangerous" and "an unsafe area" for the child to live. Thomas testified that the neighborhood was densely populated and had a great deal of traffic which limited Brigid's outdoor playtime activities. Thomas described Jeanette's apartment as "small and dark." Jeanette testified that if allowed to remove Brigid to Pueblo, Colorado, the two would initially reside at the home of her parents. Thomas described them as stable, secure, and devoutly religious. Jeanette's father is retired, in good health, and participates in community affairs. A public school, which Brigid would attend, and various recreational facilities are within walking distance of her grandparents' residence. Additionally, Jeanette's two brothers and their respective families live in Pueblo. There was testimony that Jeanette's Chicago apartment rented for $225 per month and that a nicer apartment could be obtained in Pueblo for $188 per month. Jeanette further testified of her dissatisfying employment experience in Chicago and the lack of opportunity to pursue a career in music or journalism. Although a college graduate with a Bachelor's degree in music and experience as a writer, she had been unable to secure a job in either occupation. She had unsuccessfully sought employment in Chicago as a music critic, music teacher, publicist for the Chicago Lyric Opera, and positions with the local radio and television stations. At the time of the hearing, Jeanette had been interviewed for several prospective jobs in Pueblo; however, because she was still residing in Chicago and not available to begin employment immediately, she did not receive any firm job offers.

Joseph DuCanto, the guardian ad litem, recommended that the child should remain with her mother. He also found Brigid to be unusually mature for an 8-year-old and above average in intelligence.

■■■ The court may grant leave, before or after judgment, to any party having custody of the minor child or children to remove such child or children from Illinois whenever such approval is in the best interest of such child or children. (Ill. Rev. Stat. 1967, ch. 40, par. 14.) The burden of proof is, of course, on the party seeking judicial approval of the proposed removal. (*Quirin v. Quirin* (1977), 50 Ill. App. 3d 785, 788, 365 N.E.2d 226, 228.) Paramount consideration in awarding the custody of a minor child to one parent or the other must necessarily be the welfare and best interest of the child. (*Lane v. Lane* (1976), 40 Ill. App. 3d 229, 230, 352 N.E.2d 19, 20.) After the judgment for divorce in the case at bar, the question of the custody of the child remained subject to the order of the court and could be reviewed and modified from time to time as the unfolding circumstances and the best interest of the child may require. (*Eggemeyer v. Eggemeyer* (1967), 86 Ill. App. 2d 224, 230, 239 N.E.2d 144, 147.) The child's best interest and welfare is the chief concern of the trial

court in granting custody to one divorced parent as opposed to the other. (*Masterson v. Masterson* (1976), 40 Ill. App. 3d 201, 202-03, 351 N.E.2d 888, 889.) In making a custody award, the determination is one within the discretion of the trial court, and such exercise of discretion will not be set aside unless it appears the judgment is against the manifest weight of the evidence. (*Lane*, at 233; *Hickey v. Hickey* (1975), 31 Ill. App. 3d 257, 260, 333 N.E.2d 271, 274.) Whether the noncustodial parent's petition for change of custody should be granted is a matter within the discretion of the trial court and will be reversed on appeal only when that discretion has been abused. (*Masterson*, at 202.) In ruling on an application for a change of custody, the trial court is entrusted with wide discretion. *Vysoky v. Vysoky* (1967), 85 Ill. App. 2d 306, 311, 230 N.E.2d 3, 6.

██  The husband cites *Jacobs v. Jacobs* (1974), 25 Ill. App. 3d 175, 323 N.E.2d 21, in support of his arguments. *Jacobs* was concerned with modification of judgment involving change of provision for religious training rather than removal from the jurisdiction. In *Tandy v. Tandy* (1976), 42 Ill. App. 3d 87, 90, 355 N.E.2d 585, 587, the court said:

> "[W]here one of the parents has been awarded custody of the parties' child and there is no showing that the award was against the child's best interests, a court should not oppose removal of the child from Illinois where the parent granted custody has moved or desires to move to another jurisdiction unless there is a specific showing that the move would be against the child's best interests. (*Garland v. Garland*, 19 Ill. App. 3d 951, 312 N.E.2d 811; *Spencer v. Spencer*, 132 Ill. App. 2d 740, 270 N.E.2d 72.) The holdings in these cases reflect that it is generally in a child's best interest to remain with the parent in whose custody the court has determined to place it."

Evidence of facts that existed prior to the divorce will not be admitted unless the proponent lays a foundation which shows it is relevant to the change of circumstances being urged to justify a change in the custody. (*Johnson v. Johnson* (1975), 34 Ill. App. 3d 356, 367, 340 N.E.2d 68, 77.) The father's remarriage and having a larger house than the mother were factors to be considered by the court but were not sufficient reasons for a change of custody. *Filipello v. Filipello* (1971), 130 Ill. App. 2d 1089, 1096, 268 N.E.2d 478, 482.

In *D'Onofrio v. D'Onofrio* (1976), 144 N.J. Super. 200, 365 A.2d 27, the Superior Court of New Jersey had a case similar to the one at bar. The trial court granted the mother's application to remove the parties' two children to South Carolina for purposes of establishing permanent residency there. The circumstances in the instant case mirror many of the facts that the New Jersey court considered persuasive. The evidence showed that the mother and children lived in an apartment located on a

busy and heavily traveled street which had no suitable and convenient play area. More appropriate housing accommodations with superior recreational facilities were available in South Carolina at a lower monthly rental than that which the mother was paying in New Jersey. Although the mother was trained as a bookkeeper, she had been unable to find employment in that field at a salary sufficient to support herself and her children. In addition, the mother's family lived in South Carolina and had been supportive of her and the children. In affirming the trial court's order permitting removal, the court stated:

"Where, however, the custodial parent can demonstrate that a real advantage to herself and the children will result from their removing their residence to a place so geographically distant as to render weekly visitation impossible, then the court must weigh a number of determinative factors in order to accommodate the compelling interests of all of the family members. It should consider the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children. It must evaluate the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent, and whether the custodial parent is likely to comply with substitute visitation orders when she is no longer subject to the jurisdiction of the courts of this State. It must likewise take into account the integrity of the noncustodial parent's motives in resisting the removal and consider the extent to which, if at all, the opposition is intended to secure a financial advantage in respect of continuing support obligations. Finally, the court must be satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed. The court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life style for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is available and where the advantages of the move are substantial." *D'Onofrio*, 144 N.J. Super. 200, 206-07, 365 A.2d 27, 30.

■■ ■ The trier of fact had significant opportunity to observe both parents and the child and, thus, is able to assess and evaluate their temperaments, personalities, and capabilities. We should not disturb the determination of the trial court unless it has resulted in manifest injustice or is against the manifest weight of the evidence. The presumption in

favor of the result reached by the trial court is always strong and compelling in this type of case. Despite the able arguments of counsel for the father, we do not feel justified in reversing the judgment of the trial judge. *Strand v. Strand* (1976), 41 Ill. App. 3d 651, 658, 355 N.E.2d 47, 53.

We are of the opinion that the trial court acted properly when it approved Jeanette's petition to remove the child from the jurisdiction and find that there was no abuse of its broad discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and DIERINGER, JJ., concur.