JEAN M. FALK, Petitioner-Appellant, *v.* LEONARD J. FALK, Respondent-Appellee.

Third District   No. 79-375

Opinion filed October 10, 1979.

Dennis A. DePorter, of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellant.

Theodore A. Jackson, of East Moline, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of this court:

This is an appeal by the petitioner, Jean M. Falk, from an order of the trial court denying her petition to remove her minor child, of whom petitioner was previously given custody, from the Quad Cities area to Peoria, Illinois, a distance of approximately 90 miles. Based upon a stipulated agreement, petitioner and respondent, Leonard J. Falk, were granted a divorce on March 14, 1975. Pursuant to that agreement, the petitioner was given custody of the parties' minor child, subject to reasonable visitation, including alternate weekends from Friday evening to Sunday evening, alternate holidays and six weeks in the summer, during which time plaintiff would have visitation on alternate weekends. It was also agreed that the petitioner would not remove the minor child from the Quad Cities area without the permission of the respondent.

On January 26, 1979, petitioner filed a petition to modify the divorce decree by allowing her to move, with her minor child, to Peoria. Respondent cross-petitioned to modify the decree by changing custody to the respondent.

At the hearing on the petitions, respondent testified that he is a farmer, having no other income. He readily admitted he did not want his ex-wife to move to Peoria with the child, his objections being that the stipulation does not allow it, that he does not want his child attending school in Peoria with black children, and that the child would be unable to visit his grandparents. Even if the petitioner would agree to transport the child back to the Quad Cities for visitation, the respondent testified he would continue to object, although he gave no other reason than that petitioner had not been honest with him.

Respondent admitted he had not visited the school his child attends and had never spoken to the child's teachers. While he had not recently checked the child's home with the petitioner, when the parties were first divorced, he went to his ex-wife's home three or four nights each week, but he discontinued that practice because he "just gave up on her." He had not been to her home for about eight months. Still, the respondent exercises his visitation rights.

In her testimony, the petitioner stated that she had already moved to Peoria, but had left her child with his maternal grandparents in Geneseo. The move, which took place some four weeks prior to the hearing because of an employment opportunity, was to a two-bedroom, 1½-bath apartment. At the time of the hearing, she was living alone, and if allowed to take the child to Peoria, no one other than her son would be living there.

Being an Illinois registered nurse, the petitioner is now employed at the Fireside House, Peoria Heights, as a director of nursing services. Her usual working hours are 8:30 a.m. to 4 p.m., Monday through Friday, although she is on call 24 hours a day, and her salary is $900 per month. In this position, she is responsible for the total health care needs of approximately 110 intermediate level nursing care residents and for supervision of the nursing staff. Prior to this job she worked as a nurse at Hillcrest Home, Cambridge (Henry County), from September 13, 1978, to January 22, 1979, earning $800 per month. As a staff nurse, her working hours were from 3 p.m. to 11 p.m. However, petitioner left her employment at Hillcrest House because the working hours did not allow her an adequate amount of time to be with her son. She accepted the second shift position at Hillcrest because, at that time, she needed a paying job and would take anything available. Before working at Hillcrest House, the petitioner worked on a voluntary basis, without pay, at a girl scout camp during the summer of 1978, having been unable to

secure employment in spite of applying at a number of hospitals, health-care centers, and convalescent homes in the Quad Cities area. She did not seek a position in the Iowa portion of the Quad Cities, however, because she is not licensed in Iowa.

Petitioner further testified that, if she were allowed to take her son to Peoria, she would be willing to transport the boy to the Quad Cities area on the Friday evening of respondent's designated visitation weekends and return to pick the child up on Sunday evening, even though Peoria is a 1½-hour drive from the Quad Cities. She stated she would bear the cost of this transportation. Petitioner also testified that she could drop her son off at a school, which she identified, in the morning or, if necessary, take him to her place of employment which had accommodations for children. In addition, arrangements had already been made in Peoria for a babysitter.

On cross-examination, it was brought out that the petitioner was unmarried and pregnant. While marriage to the father of this unborn child had been considered, no date had been set. She also admitted that, prior to working in the girl scout camp, her employment at the Rock Island County Health Care Center had been terminated because of an accusation of not using proper judgment, and that, three years earlier, she had requested permission to move to Chicago, having already had a job offer which was, however, conditioned upon her being able to remove her child from the Quad Cities.

At the close of the evidence, and after hearing the arguments of counsel, the trial court denied the respondent's cross-petition for custody. The respondent has not appealed this determination.

Also denied was the petition to remove the child to Peoria. Although the trial judge noted that this was not an unreasonable request, Peoria not being so far away as to create any real problem in the respondent's exercising visitation rights, it was the impression of the trial judge that the agreement of the parties at the time of the divorce might forever bar the removal of the child from the Quad Cities area "even if the evidence may indicate that's in the best interest of the child." However, the judge also stated: "There may well be circumstances that sometime would require such an overriding of this agreement, but it's not apparent at this time."

■■ While the agreements of the parties are to be given considerable weight, if that agreement is not in the best interests of the child, or if, by reason of a change in circumstance, the agreement becomes contrary to the child's best interests, a court will not be bound by such an agreement. (See *Page v. Page* (1975), 30 Ill. App. 3d 514, 334 N.E.2d 212.) Ordinarily, petitions to remove a minor child from the jurisdiction address the issue of removing that child from the State. (See Ill. Rev. Stat. 1977, ch. 40, par. 609; *Gray v. Gray* (1978), 57 Ill. App. 3d 1, 372 N.E.2d 909.) Where, however, the divorce decree, by reason of an agreement of the parties,

limits even further the area to which a child may be removed without approval, the standard to be applied must surely be the same. Thus, not only may a court approve the removal of the child whenever such removal is in the best interests of the child, but where there is no showing that an award of custody is against the child's best interests, a court should not oppose the removal of the child unless there is a specific showing that the move would be against the child's best interests. *Gray v. Gray* (1978), 57 Ill. App. 3d 1, 372 N.E.2d 909.

■■ Just as in the *Gray* case, our petitioner has arranged for housing, child-care facilities and looked into the schools he would attend. As in *Gray*, there has been a specific ruling by the trial court that custody should remain unchanged. Unlike *Gray*, the trial court has specifically found that the move would not adversely affect the father's visitation rights. Nor could the trial court have found otherwise since the petitioner stated she would transport the child, at her expense, to the respondent for the respondent's visitation. Furthermore, it appears that, because of the difference in the petitioner's working hours, the custodial parent will be able to spend more time with her child. The evidence does not establish that this move is not in the child's best interests.

Unfortunately, the respondent has failed to file a brief in this appeal. While a summary reversal is available to the appellate court in the exercise of the judges' discretion (*Smith v. Lemont Fire Protection District* (1977), 45 Ill. App. 3d 52, 359 N.E.2d 2), this court has, in the interest of justice, examined the points raised by the petitioner. As a result, it has been determined that the order of the trial court is in error. Accordingly, the order of the Circuit Court of Rock Island County is reversed and the cause is remanded for the entrance of an order allowing the removal of the minor child to Peoria, but requiring the petitioner to transport the minor child, at the expense of the petitioner, to and from the respondent's residence for all visitation periods of the respondent.

Reversed and remanded.

ALLOY and STENGEL, JJ., concur.