*In re* MARRIAGE OF CHRISTIAN R. TAYLOR, n/k/a Christian R. Vaughn, Petitioner-Appellant, and DAVID G. TAYLOR, Respondent-Appellee.

Third District   No. 3—90—0124

Opinion filed August 30, 1990.

McLaughlin, Hattery, Simpson & Sullivan, of Galesburg (S. David Simpson, of counsel), for appellant.

Barash, Stoerzbach & Henson, of Galesburg (Daniel B. Stoerzbach, of counsel), for appellee.

JUSTICE GORMAN delivered the opinion of the court:

Christian R. Vaughn (Mother) brought an action seeking leave to remove her minor child (Douglas) from the State of Illinois. David G. Taylor (Father) filed for modification of the judgment of dissolution, seeking a change in custody from Mother to himself. The two petitions were tried together. The court denied the Mother's petition and granted the Father's petition. After the proofs were closed, Mother filed a motion to supplement the record. This was denied as was Mother's subsequent motion for reconsideration. Mother appeals. We reverse the trial court, grant Mother's petition and remand to the trial court for consideration of visitation and transportation arrangements between the parties.

Mother and Father were married on August 14, 1982. Their marriage was dissolved on June 19, 1985. In the judgment, the parties agreed and the court found both parents to be fit and proper persons to have custody of their then 18-month-old child, Douglas. Mother was awarded physical custody, subject to Father's visitation rights, which included alternate weekends, some holidays and two weeks in the summer. The judgment also provided neither parent, without first obtaining a court order or the written consent of the other parent, could permanently remove Douglas from the State of Illinois.

Mother subsequently married her second husband, Rick Martin, on January 18, 1986. That marriage was dissolved on December 31, 1986, while Mother was pregnant with their child. Mother gave birth to a son, Nicholas Martin, on April 23, 1987. She was awarded custody of Nicholas.

Mother married Forrest Vaughn on April 15, 1989. Vaughn was employed in his family's print shop business in Monmouth, Illinois. Shortly after their marriage, Vaughn quit his job and entered the United States Navy. He was subsequently assigned to the U.S.S. Yellowstone and is scheduled to begin an extended tour on the ship in August 1990. The U.S.S. Yellowstone is based in Norfolk, Virginia. Mother secured permission to remove Nicholas from the State of Illinois and subsequently Mother petitioned the court to allow her to remove Douglas to Norfolk so that she, Nicholas and Douglas could live closer to Forrest.

Father filed for modification of the judgment of dissolution, seeking change of custody from Mother to himself. This petition was predicated upon Mother's impending move from Illinois to Norfolk. The

two petitions were tried together and, after a contested hearing, the trial court denied Mother's petition and allowed Father's petition. After the proofs were closed, Mother filed a motion to supplement the record. This motion, as well as a subsequent motion for reconsideration, was denied. Mother appeals.

Mother raises several issues for our consideration. Initially, Mother contends that the trial court improperly addressed the two petitions. We agree.

■ Mother sought permission to move Douglas from Illinois to Virginia. A petition to remove is governed by section 609 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 609). Under section 609, the burden is on the petitioner to show that removal of the child from Illinois is in the child's best interests. The factors used to determine the best interests of the child were set forth in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041. In *Eckert* our supreme court stated:

> "There are *** several factors which may aid a trial court in determining the best interests of the child. The court should consider the proposed move in terms of likelihood for enhancing the general quality of life for both the custodial parent and the children. [Citations.] The court should also consider the motives of the custodial parent in seeking the move to determine whether the removal is merely a ruse intended to defeat or frustrate visitation. [Citations.] Similarly, the court should consider the motives of the noncustodial parent in resisting the removal. [Citation.] It is also in the best interests of a child to have a healthy and close relationship with both parents, as well as other family members. Therefore, the visitation rights of the noncustodial parent should be carefully considered. [Citations.] Another factor is whether, in a given case, a realistic and reasonable visitation schedule can be reached if the move is allowed. [Citation.]" 119 Ill. 2d at 326-27.

■ The response of Father was to file a petition for change of custody. A petition for change of custody is governed by section 610(b) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 610(b)). It provides:

> "The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment, that a change has occurred in the circumstances of the child or his custodian *** and that the modification is necessary to serve the best interest of the child. *** The court shall state in its decision specific findings of fact in support of its modification or termina-

tion of joint custody if either parent opposes the modification or termination."

Father's petition was predicated upon Mother's anticipated move to Virginia.

■ The court allowed both petitions to be consolidated into one hearing. Problems in consolidated section 609/section 610(b) hearings have arisen in the past. (See, *e.g.*, *In re Marriage of Gratz* (1989), 193 Ill. App. 3d 142, 548 N.E.2d 1325.) A judge is required to hear two different types of evidence and must be careful not to allow evidence proper for one petition to impact upon the decision as to the other petition.

In the instant case the trial court issued one order discussing its findings of fact and its decision denying Mother's petition to remove and allowing Father's petition for change in physical custody. We believe that the trial court was in error. The trial court should have ruled on Mother's petition first. Had the trial court denied Mother's petition, the basis for Father's petition would have been eliminated. Father then would have been required to prove, by clear and convincing evidence, that another change (other than the move to Virginia) had occurred such that Douglas should be removed from Mother's physical custody.

Mother next contends that the trial court's decision to deny her petition was against the manifest weight of the evidence. We agree.

The only findings in the order of January 16, 1990, pertaining to Mother's petition are:

"1. Christian Vaughn, the mother of Douglas Taylor, is presently married to Forrest R. Vaughn, who is enlisted in the United States Navy and is assigned to duty to the U.S.S. Yellowstone in Norfolk, Virginia.

2. Christian Vaughn is seeking employment and residence in Norfolk.

3. The duties of Forrest R. Vaughn as a sailor will require him to spend a duty watch in excess of 24 continuous hours aboard his ship when in port and sea duties when the ship is no longer in port, all of which will remove him from the parental home for extended periods.

\* \* \*

8. It is in the best interest of Douglas Taylor to remain in the State of Illinois, where he has already established roots in the community, has a supportive extended family, whereas to remove him from the State of Illinois would place him in a transitory unstable environment, which would not be perma-

nent and to his best interests."

There are no other factors set forth in the order which the court could properly have considered in denying the petition to remove. It is apparent that while the trial court made some findings of fact, it did not apply its findings to the factors outlined in *Eckert*. Accordingly, we have examined the record and now apply the facts of the case to the factors set forth in *Eckert*.

The first factor considers the likelihood that the proposed move will enhance the general quality of life for the child and the parent having physical custody. As far as Douglas is concerned, we cannot say that the general quality of his life will be directly enhanced by a move to Norfolk.

The move to Norfolk will significantly enhance the general quality of life for Mother, the custodial parent, and, therefore, indirectly beneficially affect Douglas' quality of life. It would allow her to see more of her husband while his ship is in Norfolk. The family would not be saddled with the expense of maintaining two residences (one in Illinois and one in Virginia). Additionally, she would draw camaraderie support from the Navy community. This would help her deal with the absences of her husband. Additionally, as a resident of the Norfolk area, the Navy will be able to assist her in procuring a job, which could pay a higher rate than what she was making here in Illinois. There are advantages (PX, health/dental care, etc.) that are available in Norfolk. While it is true that some of these benefits would also be available in Illinois, she would have to travel to obtain them.

As to the second and third *Eckert* factors, there were no allegations that the motives of either Mother or Father in seeking or resisting removal were improper. Accordingly, these factors need not be addressed. *In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 529 N.E.2d 780.

The fourth factor examines the visitation rights of the parent lacking physical custody. The fifth factor requires inquiry into whether a realistic and reasonable visitation schedule can be reached if the move is allowed.

There have not been significant problems in the past regarding visitation. The trial court noted, and we agree, that Douglas has enjoyed a close and loving relationship with Father, Father's wife and Father's extended family. It is also apparent that Douglas has enjoyed a good relationship with Mother, his primary care-giver since birth, and his stepbrother, Nicholas.

Mother is willing to allow liberal visitation, including extended summer visitation of Douglas with Father. The court-appointed psy-

chologist opined that Mother's proposed visitation was reasonable and would not substantially interfere with Father's relationship with Douglas. We are of the opinion that, as in *In re Marriage of Gratz* (1989), 193 Ill. App. 3d 142, 548 N.E.2d 1325, the type of visitation proposed, absent any significant problems in the past with visitation, militate in favor of removal.

■■ Applying the facts of the instant case to the factors outlined in *Eckert*, it is apparent that the trial court's decision denying Mother's petition was against the manifest weight of the evidence. Accordingly, we reverse the trial court's decision denying Mother's petition to remove.

■■ We also reverse the trial court's decision allowing Father's petition to change physical custody. Father was required to prove, by clear and convincing evidence, "that a change has occurred in the circumstances of the child or his custodian *** and that the modification is necessary to serve the best interest of the child." Ill. Rev. Stat. 1987, ch. 40, par. 610(b).

We also agree that the trial court erred in admitting testimony of Dr. Ronald Leonard. In denying Mother's motion for ruling on evidentiary issues in evidence depositions, the court stated in its February 9, 1990, order that it would be presumed the court considered only competent evidence, and to the extent the evidence depositions contained inadmissible evidence, the court did not consider that evidence. However, in its order of January 16, 1990, the court made a finding which reads in pertinent part:

> "Forrest R. Vaughn *** disciplined the minor child, Douglas Taylor, by locking him in a dark closet which subsequently caused the minor child to have nightmares."

The only evidence in the record about this incident appears in the deposition testimony of Dr. Ronald Leonard. Since this is the only testimony the court could have relied on, the trial court obviously found it to be competent and considered it in making the specific finding mentioned above.

It is our opinion that the trial court's reliance on the evidence was improper. The deposition reveals that Dr. Leonard testified that he had met with Douglas on October 27, 1987, and took notes of his conversation during that examination. Dr. Leonard had no independent recollection of this conversation. Dr. Leonard was asked by Father's counsel to refer to his notes. A hearsay objection by Mother's attorney was denied. During cross-examination, Dr. Leonard stated that Douglas has not been brought to him for treatment, that he had not treated him, that he was not asked to treat him and that he did not

give any medical advice of any kind. He did not recommend medical treatment, nor refer Douglas to anyone else for medical treatment. Under examination by Father's attorney, Dr. Leonard was asked what he was looking for in his examination. Dr. Leonard indicated that he was looking for signs of physical abuse, such as bruising and other evidence of abuse. He indicated that none was found. Dr. Leonard also testified that he did not make a determination whether Douglas was being truthful. Additionally, Dr. Leonard indicated that Father was present during the questioning and that it would be common for a three-year-old child to not want to say something that would displease his father.

■ The exception for hearsay in reporting to a doctor one's complaints has to do with the fact that the person who is making the statements is otherwise reliable as a witness. The reason the doctor is allowed to relate what the person has told him is that he is being told the statement in order to secure treatment. What would otherwise be hearsay is given the indicia of reliability because it is in the interests of the person making the statement to be truthful with the doctor so that he can be treated successfully. *Melecosky v. McCarthy Brothers Co.* (1986), 141 Ill. App. 3d 84, 89, 489 N.E.2d 892.

■ In the instant case, we have a three-year-old boy whose competency to testify is clearly questionable. When the doctor was asked whether he had an opinion regarding the truthfulness of the child, he stated:

"All I did was write down what the young man told me. How do you tell if a three year old is telling you the truth[?]"

Accordingly, we are of the opinion that the testimony constituted hearsay and was not within any exception to the hearsay rule. The trial court erred in relying upon it.

The matter is remanded to the trial court for consideration of visitation and transportation arrangements between Mother and Father.

Reversed and remanded.

HEIPLE, P.J., and STOUDER, J., concur.