*In re* MARRIAGE OF DANIEL MARK CARLSON, Petitioner-Appellee, and BRENDA LAURETTE CARLSON, Respondent-Appellant.

Third District   No. 3—90—0622

Opinion filed August 2, 1991.

SLATER, J., dissenting.

James L. Neppl, of Ruud, Scovil & Neppl, of Rock Island (Douglas C. Scovil, of counsel), for appellant.

Braud/Warner, Ltd., of Rock Island (Donovan S. Robertson, of counsel), for appellee.

JUSTICE GORMAN delivered the opinion of the court:

This appeal is from the circuit court's denial of the petition of Brenda Carlson (the mother) to remove her two minor children from Illinois. This petition was opposed by Daniel Carlson (the father), who was formerly married to Brenda Carlson. We reverse and remand.

The parties were married in August 1976. Their first child was born in October 1980. Their second child was born in July 1984. The parties' marriage was dissolved in April 1985. Incorporated into the decree of dissolution of marriage was a settlement agreement, which included provisions for joint custody of the two children. While the mother was denoted therein as the "primary custodian of the children," the father was granted custody of the children for extensive periods of time. In addition, the custody provisions stated:

"The [father] shall be responsible for major decisions with regard to the education and religious training of the children. It is specifically agreed by the parties that the [father] shall register the children for school from his residence *** [in] East Moline, Illinois."

While some disagreements arose over interpretation of certain joint custody provisions, the joint custody arrangement has worked reasonably well in this case. The parties have been fit parents and have taken very good care of their children. The children have been excellent students, and have been enrolled in programs for gifted children at their school, the public school in their father's school district. The father has taken great interest in his children, and especially in their education. He has helped them with their homework almost every school day. The father also has been active in his children's school activities, and has participated in school programs. The mother has been involved in school activities, but has not assisted the children with their homework since the father has kept that role to himself.

At some point the father remarried, but stayed in East Moline. The father's new wife has gotten along well with the children and has

become involved with some of the children's school activities and with some school programs.

Sometime around 1987 or 1988, the mother began seeing a man to whom, in December 1989, she became engaged to be married. This man is a vice-president of a bank in Dubuque, Iowa, and owns a small home and the one-acre parcel of land on which the home stands. He has arranged financing for a new, larger home to be built on that land in the event the mother would be allowed to bring her children to Dubuque. The Dubuque area is about 75 miles away from East Moline and about 90 minutes away by car. The mother's plans, in the event she would be permitted to move with her children to Dubuque, are to marry her fiance, quit her job, and move with her children into her husband's home. She plans to devote her energies primarily to the care of her husband and her children rather than to employment outside the home.

In March 1990 the mother filed a petition under section 609 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 609), seeking leave to remove her children from Illinois after her marriage to her fiance. The father opposed this petition. A hearing was held on the petition on May 22, 1990. By the time of the hearing on the petition, the mother and her fiance had set a date for the wedding in August 1990. The trial court denied the petition on August 2, 1990. Afterwards, but also on August 2, 1990, the mother moved for reconsideration of the denial of her petition, a hearing was held on her motion, and the trial court denied her motion. The mother filed her notice of appeal on August 31, 1990.

The sole issue is whether the trial court erred in denying the mother's petition.

■ We note that in joint custody cases, it is section 609 of the Act that applies to petitions to remove a child from Illinois, rather than section 610 of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 610), which deals with the more general matter of modifications of custody judgments. (See *Winebright v. Winebright* (1987), 155 Ill. App. 3d 722, 508 N.E.2d 774; *In re Marriage of Bednar* (1986), 146 Ill. App. 3d 704, 496 N.E.2d 1149.) Section 609 of the Act states in relevant part:

> "The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or

children is on the party seeking the removal." (Ill. Rev. Stat. 1989, ch. 40, par. 609(a).)

A trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 328, 518 N.E.2d 1041, 1046.

The Illinois Supreme Court in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041, examined the application of section 609 of the Act. While *Eckert* involved custody awarded to the mother "subject to rather extensive visitation rights" in the father (rather than joint custody), section 609 makes no distinction between cases of joint custody and cases of custody in only one of the parents, and so we find the principles enunciated in *Eckert* to be applicable to this case. Where both parents have joint custody of a child, a parent's request to remove the child from Illinois should be given particularly close judicial scrutiny. (*In re Marriage of Bednar* (1986), 146 Ill. App. 3d 704, 712, 496 N.E.2d 1149, 1154.) However, the trial court must determine whether current circumstances are such that removal from Illinois is in the best interests of the child, and the court is not bound by the prior custody arrangements, even when those arrangements have been by agreement of the parents. *Cf. Falk v. Falk* (1979), 77 Ill. App. 3d 13, 395 N.E.2d 750 (holding that the best interests of the child overrode a custody provision preventing removal of the child from the Quad Cities area).

In *Eckert* the Illinois Supreme Court stated:

> "A determination of the best interests of the child cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case. [Citations.] There are, however, several factors which may aid a trial court in determining the best interests of the child. The court should consider the proposed move in terms of likelihood for enhancing the general quality of life for both the custodial parent and the children. [Citations.] The court should also consider the motives of the custodial parent in seeking the move to determine whether the removal is merely a ruse intended to defeat or frustrate visitation. [Citations.] Similarly, the court should consider the motives of the noncustodial parent in resisting the removal. [Citation.] It is also in the best interests of a child to have a healthy and close relationship with both parents, as well as other family members. Therefore, the visitation rights of the noncustodial

parent should be carefully considered. [Citations.] Another factor is whether, in a given case, a realistic and reasonable visitation schedule can be reached if the move is allowed. [Citation.]

A reasonable schedule is one that will preserve and foster the child's relationship with the noncustodial parent." *Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46.

■ In this case no question has been raised that the motives of the parents are anything other than honorable. Inasmuch as the distance from East Moline, Illinois, to Dubuque, Iowa, is only about 75 miles, and travelling time is only about 90 minutes, a realistic and reasonable schedule for custody of the children can be reached if the move is allowed. The determination of the best interests of the children in this case depends largely on whether the move is likely to enhance the general quality of life of the children and of their mother.

If only direct benefits to affected children were considered, there would almost never arise a situation where removal would be permitted where children were in a good environment with good schools, good parents, and good friends. However, it is necessary to also consider indirect benefits to the children from the proposed move.

The present case is similar to *In re Marriage of Taylor* (1990), 202 Ill. App. 3d 740, 559 N.E.2d 1150. In that case a mother wished to move from Illinois to Virginia to be near her new husband, who was in the United States Navy, and whose ship was based at Norfolk, Virginia. She wished to remove her minor child from Illinois to take the child with her to Virginia. The trial court denied her petition to do this, but the appellate court reversed, holding that the trial court's determination of what was in the best interests of the child was against the manifest weight of the evidence. The appellate court noted that while the general quality of the child's life would not be directly enhanced by the move to Virginia, the move would enhance the mother's quality of life significantly, and in that way would indirectly enhance the child's quality of life.

■ In the present case the principal indirect benefit to the children of granting the petition to remove would derive from the effect on their mother from the establishing of a new and successful marriage relationship. The mother's quality of life would be significantly improved, both by being able to live with her new husband and by not needing to work outside the home. In the new arrangement the mother would have the time and energy to be a part of her children's life in ways that had not been possible in the past, which would certainly enhance the mother's quality of life. Somehow the trial court believed that the intended marriage of the mother with her fiance was

"far from certain," despite uncontroverted testimony that they were engaged to be married and that a date had been set for the wedding. In failing to give proper consideration to the enhancement of the general quality of life of the mother, the trial court erred.

The children in this case have the good fortune of having been raised in one very good environment, and of having another very good environment to which their mother wishes to take them. They are young enough that they would be expected to make new friends and otherwise adapt to their new environment without undue hardship. While they would lose the near-daily contact with their father and other relatives, they would live close enough to spend some weekends with their father and to maintain ties with other relatives. In addition, arrangements could be made to let the father have additional periods of custody in the summer or during school vacations, thereby helping to maintain ties with the father and other relatives. Occasions for disagreements over custody (which have continued to arise more than five years after the dissolution of marriage) would be greatly lessened, with benefits for the children as well as the parents. The children would live in a traditional family setting while with their mother, and on school days would not have to be shuttled around from place to place as has had to be done in East Moline in order to mesh their school and activity schedules to their parents' work schedules and the joint custody schedule. The mother's fiance has the ability and willingness to provide a good home and sufficient resources to permit the mother to stop working outside the home. This would permit the mother to spend more time with her children and to see that they get the assistance and attention they need with their schoolwork and other activities.

While it might appear that in moving to Dubuque the children would lose the benefit of their father's guidance in their education and religious training, this would not have to be the case. While the mother would certainly have to become more involved in these areas, to carry out the wishes of the father if for no other reason, the father within reason could continue to make "major decisions with regard to the education and religious training of the children" in Dubuque. There is ample evidence of the availability in Dubuque of quality public education and of religious training in the father's religious denomination.

█ When circumstances change, what is called for is a redetermination of what is in the best interests of the children in light of the changed circumstances. The inquiry becomes not what is "fair" or "unfair" for each parent, but what is best for the affected children.

While the effects on the parents of granting or denying the removal petition must be considered, they must be considered with a view to determining how they would affect the children, either directly or indirectly.

In this case the trial court's determination that the mother failed to demonstrate that the best interests of the children would be served by their moving with her to Dubuque, Iowa, is against the manifest weight of the evidence. We reverse that ruling and grant the petition to remove. We remand this cause to the circuit court for consideration of those changes in the joint custody provisions (especially the custody schedules) made necessary or desirable as a result of our decision.

Reversed and remanded.

HAASE, J., concurs.

JUSTICE SLATER, dissenting:

I do not agree that the trial court's decision was against the manifest weight of the evidence and therefore I respectfully dissent. The record shows that the children's father was involved in the PTA, helped the children with their homework after school, and participated in extracurricular activities. He has been a room parent since the children began attending school. On the other hand, the children's mother stated that she helps the children with their homework "once in a great while." In addition, the children's maternal and paternal grandparents live in the Quad Cities area, and the children have friends at school. The majority speculates about the benefits of the "new and successful marriage relationship" (216 Ill. App. 3d at 1081) to be established by the mother which would provide the children with a "traditional family setting" (216 Ill. App. 3d at 1082) where the mother does not work and she can devote her time and energy to the children. The majority decides that these benefits outweigh the loss of daily contact between the children and their father and the diminished opportunities for the children to visit their grandparents. While such a finding is not inherently unreasonable and might be appropriate if this court were the trier of fact, I find such a decision unacceptable from a court of review for several reasons.

First, the mother bears the burden in this case of proving that removal of the children is in their best interests. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 326, 518 N.E.2d 1041, 1045.) The evidence here was closely balanced and the trial court found that the mother failed to carry this burden. Under the facts presented here, I

do not believe the court's decision "is *clearly* against the manifest weight of the evidence *and* it appears that a manifest injustice has occurred" (emphasis added) (*Eckert*, 119 Ill. 2d at 328, 518 N.E.2d at 1046).

Second, "[w]hen a parent has assiduously exercised his or her visitation rights, 'a court should be loath to interfere with it by permitting removal of the children for *** unpersuasive or inadequate reasons.' " (*Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046, quoting *D'Onfrio v. D'Onfrio* (1976), 144 N.J. Super. 200, 206, 365 A.2d 27, 30.) There is no question that the children's father was intimately involved in raising and educating them and I believe that the majority's decision fails to give sufficient weight to this fact.

Finally, I agree with the majority that the proper inquiry in cases of this nature is "not what is 'fair' or 'unfair' for each parent, but what is best for the affected children" (216 Ill. App. 3d at 1082). This case illustrates just how difficult it can be to make such a determination. That is why it is paramount for a court of review to give proper deference to the trial court, which has the opportunity to observe the parents and other witnesses and " 'assess and evaluate their temperaments, personalities, and capabilities. *** The presumption in favor of the result reached by the trial court is always strong and compelling in this type of case' " (*Eckert*, 119 Ill. 2d at 330, 518 N.E.2d at 1047, quoting *Gallagher v. Gallagher* (1978), 60 Ill. App. 3d 26, 31-32, 376 N.E.2d 279, 283). I would affirm the decision of the circuit court.