*In re* MARRIAGE OF JOANN LICHTENSTEIN, a/k/a Joann Bowley, Petitioner-Appellee, and REINHOLD S. LICHTENSTEIN, Respondent-Appellant.

Fifth District    No. 5—85—0445

Opinion filed January 10, 1986.

Robert E. Wells, Jr., of Pessin, Baird & Wells, of Belleville, for appellant.

John R. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

The marriage of petitioner (Joann Bowley, formerly Lichtenstein) and respondent (Reinhold Lichtenstein) was dissolved by the circuit court of St. Clair County on June 8, 1981. Petitioner was awarded custody of the couple's two minor children. On June 17, 1985, the court granted petitioner leave to remove the children from Illinois to take them to Germany to live with petitioner and her new husband, and simultaneously denied respondent's petition to modify custody. On appeal, respondent claims the court's decisions to grant petitioner leave to remove the children and to deny his petition for modification of custody were against the manifest weight of the evidence. He also claims the court improperly considered hearsay evidence. We affirm.

Petitioner and respondent were married in 1967. Two children were born to the marriage: Amy, who was 11 years old at the time of the proceedings considered here, and Brent, who was seven at the time of these proceedings. The marriage was dissolved on June 8, 1981. Petitioner was awarded custody of both children, with respondent granted visitation on three weekends a month, one month in the summer, and certain holidays.

Petitioner married Ralph Bowley on September 29, 1984. On March 4, 1985, she filed a petition for leave to remove the children from Illinois. She alleged that her new husband, a military service-

man, was being transferred to West Berlin, and she wanted to move with him and take the children. On April 19, 1985, respondent filed a petition to modify custody, asking that custody of the children be awarded to him. He cited numerous reasons, among them petitioner's plan to move to Germany.

Generally, petitioner presented evidence that she was a good mother, and respondent presented evidence he was a good father. A court-appointed expert, Dr. Daniel Cuneo, agreed that both were good parents. He found that neither had any severe personality problems, and that both clearly had the financial means to care for the children. Petitioner presented evidence that the children had a good relationship with the new husband and his 18-year-old daughter Kelly. Petitioner also testified that she did not plan to work outside her new home in West Berlin so she would actually have more time to spend with the children than previously. Respondent presented evidence the children had a good relationship with his fiancee, Nina Mitchell. Petitioner admitted that she felt respondent loved his children and was a good father. Respondent still lived in the marital home and the children had friends in that neighborhood.

There was some evidence presented by each party to attack the fitness of the other spouse. Respondent made a bare assertion that petitioner had "abused Brent from the day he was born." He also testified that petitioner had refused him visitation at various times and had attempted to make visitation difficult for him. Petitioner admitted there were occasions when she had refused him visitation.

Petitioner presented evidence that respondent had attempted to have her injured. Respondent in fact admitted at trial that he had paid someone to run his wife off the road and to have her car burned, and admitted making other arrangements to have her injured. He also admitted pleading guilty to charges stemming from these incidents. Respondent said he did these things because petitioner had abused their son Brent "from the day he was born." Despite this evidence, petitioner testified she did not believe respondent would hurt the children.

Respondent further admitted he and his fiancee slept together in his house at times when the children were staying with him, but he denied the children ever observed him in bed with his fiancee. Respondent also admitted he had threatened to take the children to Germany himself at a time when he and petitioner were arguing over visitation. We note that respondent is a native of Germany and has relatives there.

Mr. Bowley testified that he was a Chief Master Sergeant in the

United States Air Force. He stated that he had been at Scott Air Force Base in Illinois for five years, and that he knew he was due for reassignment. Bowley testified he was not eligible for any assignments in the United States, and that he knew of three openings overseas for someone with his rank. These openings were in Japan, Australia, and West Berlin in Germany. He said he chose West Berlin because it was the closest, and that he voluntarily selected that base because he did not want to be ordered to go to a less desirable installation. He stated he would be in Germany three years, and that there was a 75% probability he would be back in Illinois at Scott Air Force Base after that time. He admitted there were procedures to appeal overseas transfers but stated those procedures would not apply in his case. Bowley had been in the military 22 years.

The court-appointed psychologist, Dr. Cuneo, testified it was his opinion that the children should remain with their mother, even though it meant going to Germany. He stated continuity was important for young children, and that he saw no reason to change custody from petitioner to respondent. Another psychologist, Dr. Marc Frankel, testifying for petitioner, stated that it was his opinion the move to Germany would cause less psychological stress and trauma for the children than changing custody to respondent.

The court interviewed the two children in chambers. Amy was not asked to state a preference as to where she would rather live. There had been prior evidence she did not want to state a preference. Amy did tell the court she could handle making new friends in Germany and could adapt to life there. She also stated she could adapt if she went to live with her father. Brent told the court he wanted to live with his father and that he did not want to move to Germany and did not want to move anymore. He said he would not be willing to make new friends in Germany, but did not say why. Brent also told the court that he, his mother and sister fought.

On June 17, 1985, the court granted petitioner leave to remove the children and denied respondent's petition for change in custody. The court modified respondent's visitation rights to give him two months in the summer and one week at Christmas.

■■ ■ Respondent first claims the court's decision to maintain custody of the children in petitioner was against the manifest weight of the evidence. Section 610(b) of the Illinois Marriage and Dissolution of Marriage Act states what must be shown before custody can be modified:

> "After the expiration of the 2 year period following a custody judgment specified in subsection (a) of this Section, the court

shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child. \*\*\*" Ill. Rev. Stat. 1983, ch. 40, par. 610(b).

Under the Act, there is a legislative presumption in favor of the present custodial parent so as to promote stability and continuity of the child's custodial relationship and environment. (*In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385, 1389.) A custodial judgment cannot be modified unless there is a material change in circumstances relating to the child's best interests. The evidence must show that the parent to whom custody was originally awarded is either unfit to retain custody or that the change in conditions is directly related to the child's needs. *In re Custody of Dykhuis* (1985), 131 Ill. App. 3d 371, 374, 475 N.E.2d 1107, 1109.

■ Respondent has failed to meet these conditions. There was evidence petitioner has been a fit and proper parent. Respondent did make a bare allegation that petitioner had abused their son, but the court was free to reject this testimony, especially since there was no other evidence of abuse. The children have a good relationship with their mother and her new husband. Petitioner and her new husband provide for the needs of the children. Respondent has failed to show how the move to Europe will change that. In fact, petitioner testified she would not be employed outside the home in Germany, so she will have more time to spend with the children than previously. Furthermore, while a change in the custodial parent's residence is a relevant factor in determining a child's best interest, it is not controlling unless it adversely affects the child's welfare. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 620, 435 N.E.2d 1361, 1365.) Respondent has failed to show that a change in custody is necessary to serve the best interest of the children.

■ Respondent next claims petitioner failed to meet her burden of proof regarding removal of the children from Illinois. Section 609 of the Illinois Marriage and Dissolution of Marriage Act states:

"The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in

the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal. When such removal is permitted, the court may require the party removing such child or children from Illinois to give reasonable security guaranteeing the return of such children." Ill. Rev. Stat., 1984 Supp., ch. 40, par. 609.

The petitioner here clearly has the burden of proof. "However, a *prima facie* case is presented when the petitioner shows a sensible reason for the move and makes a showing that the move is consistent with the child's best interests. Because a child usually receives little, if any, demonstrable benefit from moving, a direct benefit need not be shown." *In re Marriage of Brady* (1983), 115 Ill. App. 3d 521, 523, 450 N.E.2d 985, 986-87.

Here, petitioner's reason for the move is to be with her new husband, who is being transferred. She wants to take the children with her to keep the family together. If she did not request removal, she would be faced with either staying in Illinois with her children and being without her husband, or going to Europe with her husband and leaving the children behind. We find there was a sensible reason for the move.

We reject respondent's argument that Bowley did not explore all possible avenues of trying to remain in Illinois. Bowley testified he was not eligible for assignment in the United States and that he made a voluntary selection of West Berlin so as to avoid being ordered to a less desirable foreign location. Perhaps he could have argued strongly with his superiors to stay in Illinois or at least the United States, but we cannot hold it was erroneous for the court to conclude he did not have to make all possible attempts to remain here. Bowley might have been jeopardizing his status in the military had he vigorously protested reassignment.

Further, the finding that the move was consistent with the best interests of the children was not against the manifest weight of the evidence. The children will be staying with their mother, who has had primary custody since the divorce. Petitioner will have more time because she does not plan to work outside the home. There was sufficient evidence to show petitioner was a fit parent and will continue to be. There is a good chance the children will be back in Illinois in three years, and likely would live here permanently after their return.

■ Respondent next alleges the court erroneously admitted hearsay evidence regarding conditions in West Berlin. We have reviewed each allegation raised by respondent and find any error to be harm-

less. Not every error committed by the trial court in a civil case leads to reversal. Rather, there must be some showing that the appellant has been prejudiced by that error and reversal is required only where it appears that the outcome might have been different had the error not occurred. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 344-45, 461 N.E.2d 447, 451.) Respondent has failed to show that the outcome might have been different had the alleged errors not occurred.

■ Respondent also argues the court considered impermissible hearsay evidence that respondent told Amy that if she went to live with her mother he never wanted to see her again. This statement was reported by witnesses who said Amy had told them what her father had said at a time when Amy was emotionally upset. The court admitted evidence of what respondent said but stated it would only go to show Amy's state of mind. Amy did not testify about the statement. However, respondent himself admitted at trial that he told his daughter that if she went to live with petitioner he never wanted to see her again. Consequently, he cannot argue here about the admission of evidence of this statement, and any error was harmless.

■ Respondent next claims he was erroneously limited in his cross-examination of Richard Lloyd, a witness for petitioner who had served in the Air Force. Respondent elicited information on cross-examination of Lloyd that there were methods by which a military officer could object to an undesirable transfer, and respondent claims he was unduly limited in this attempt. However, the record shows respondent was able to elicit as much information that Lloyd had regarding possible appeal procedures. The record shows respondent was limited in his cross-examination of Lloyd regarding another issue, but regarding that issue Lloyd said he had no knowledge. Thus, we can find no error.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.