*In re* MARRIAGE OF MICHAEL F. BEDNAR, Plaintiff-Appellee, and CAROL BEDNAR, Defendant-Appellant.

First District (4th Division)   Nos. 85—2113, 85—2191 cons.

Opinion filed July 24, 1986.

Marvin A. Miller and Vincent L. DiTommaso, both of Chicago (Washlow, Chertow & Miller, of counsel), for appellant.

Charles Locker and Michael Mallen, both of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Pursuant to this court's allowance of her petition for leave to seek permissive interlocutory appeal in accordance with Supreme Court Rule 308 (87 Ill. 2d R. 308), Carol Bednar (Carol) appeals from the order of the Cook County circuit court which denied her motion to dismiss the petition of her former husband, Michael Bednar (Michael), to remove Bradford, the son of Carol and Michael, from the jurisdiction of the State of Illinois. Carol and Michael had previously agreed to the joint custody of Bradford, with Michael to have physical residence of the son and Carol to have substantial and specific rights of visitation. This agreement was embodied in a trial court judgment which dissolved the parties' marriage in 1984. Since Michael's petition for removal from Illinois was filed within a few months following the marriage dissolution, Carol filed a motion to dismiss the petition on the basis that a petition for removal where both parents are granted joint custody is, in effect, a petition for modification of custody under section 610 of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (Ill. Rev. Stat. 1983, ch. 40, par. 610). The trial court denied Carol's motion to dismiss the removal petition, and we granted permissive interlocutory appeal based upon the following per-

tinent findings and conclusions contained in the trial court's order of certification:

"The Court finds that Order of June 20, 1985, denying Defendant's Motion to Strike involved a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from that Order may materially advance the ultimate termination of this litigation; and that

The question of law involved in the June 20, 1985, order is whether Plaintiff's Petition for Removal which was filed less than three months after the date of the Court's joint custody judgment herein is governed by Section 603.1 and Section 610 of the Illinois Marriage and Dissolution of Marriage Act and whether Plaintiff's Petition for Removal is fatally deficient as a matter of law as a result of its failure to include affidavits showing that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health, as required by Section 610 which states that no motion to modify a custody judgment may be made earlier than two years after its date, unless the Court permits it to be made on the basis of such affidavits."

We conclude that Michael's petition for removal is governed by section 609 of the Dissolution Act (Ill. Rev. Stat. 1983, ch. 40, par. 609) regarding removal petitions and does not constitute a "modification of custody" under sections 603.1 and 610 of the Dissolution Act (Ill. Rev. Stat. 1983, ch. 40, pars. 603.1, 610). Consequently, we find that Michael's petition for removal was not deficient as a matter of law because of its failure to include affidavits alleging that there was reason to believe the child's present environment might endanger seriously his physical, mental, moral or emotional health. (See Ill. Rev. Stat. 1983, ch. 40, par. 610(a).) Accordingly, we remand the cause for further proceedings consistent with the views expressed herein.

BACKGROUND

Carol and Michael Bednar were married on January 8, 1977. One child, Bradford, was born to the marriage, on February 18, 1978. Their marriage was dissolved pursuant to judgment entered in the Cook County circuit court on June 12, 1984, retroactive to May 2, 1984. At that time, Carol was 27 years old, Michael was 34 years old, and Bradford was 6.

Pursuant to the judgment of dissolution incorporating the parties' agreement, Michael received residential custody of their son and Carol was granted specified rights of visitation. The trial court's judg-

ment for dissolution of marriage and other relief of June 12, as ultimately corrected by the trial court in an order entered May 2, 1985, effective *nunc pro tunc* to June 12, 1984, provided for joint custody as follows:

> "That both parties are fit and proper persons to have the joint care, custody, control, health, education and religious training of the minor child, and it is in the best interests of child that both parties have the joint care, custody, control, health, education and religious training of the minor child and, accordingly, the care, custody, control, health, education and religious training of the minor child of the parties shall be jointly vested in the parties.
>
> MICHAEL F. BEDNAR shall have the right of physical (residential) custody of the minor child, and the minor child shall reside primarily with him, subject to the rights of visitation of CAROL S. BEDNAR, which such visitation is as follows:
>
> a. Each Thursday, from 5:00 to 7:00 p.m.
>
> b. The first and third weekend of each month from Friday at 6:00 p.m. to Monday at 8:00 a.m., Carol to return said child to said child's babysitter.
>
> c. Alternating national and legal holidays.
>
> d. Father's Day with the father, Michael.
>
> e. Mother's Day with the mother, Carol.
>
> f. On either the 2nd or 4th weekend of the month from 6:00 p.m. Friday to 6:00 p.m. Saturday."

Michael's petition to remove Bradford from the State of Illinois was filed pursuant to leave of court on September 6, 1984. In it Michael alleged that he was presently earning $1,000 per month in pretax salary, and that he had been offered an opportunity for employment as a drywall patchman in the State of Colorado, which provided a starting salary of $600 per week. Michael's petition also stated that his mother, who lived in California, advised him that she would leave her residence in California and take up residency with him in Colorado, thereby enabling her to provide "constant supervision for the minor child of the parties during such time as [Michael] is employed." Michael stated in his petition that the present babysitting for the child in Illinois was not accomplished by individuals who are related to Michael.

Michael also alleged in his petition that it would be in Bradford's best interests for the court to permit removal of the child to Colorado with his father, on the ground that "removal will permit [Michael] to substantially increase his earnings, thereby making greater funds

available for the necessary care, health, and welfare of the minor child, and that by virtue of [Michael's] mother being available to provide both supervision and babysitting chores during the period that [Michael] is at work."

Michael's pleading further noted that he was "willing to make adequate provisions" for Carol's visitation with Bradford to preserve her relationship with the child. He also observed that the increase in his salary "would more than offset any reduction which the Court might grant to [Carol] in the current support allowances provided by her."

Carol's motion to dismiss Michael's petition for removal was filed on September 28, 1984. In it she argued that Michael's petition amounted to a request for modification of custody pursuant to section 610 of the Dissolution Act, and that as such the petition was deficient for failure to allege facts showing that the child's present environment might seriously endanger his physical, mental, moral, or emotional health. See Ill. Rev. Stat. 1983, ch. 40, par. 610.

Michael subsequently filed a response to Carol's motion to dismiss, and the parties thereafter filed memoranda of law in support of their positions and presented oral argument to the trial court on their respective views. In its oral pronouncements denying Carol's motion to dismiss Michael's removal petition, on June 20, 1985, the court observed that it was denying the motion "on the theory that physical custody [is] in the father, [he is] not asking for a change, physical custody will still be in the father *** joint custody is just a placebo, and physical custody is what matters."

The trial court denied Carol's motion to dismiss the removal petition on July 19, 1985. Subsequently, this court allowed Carol's petition for permissive interlocutory appeal based upon Supreme Court Rule 308 (87 Ill. 2d R. 308).

OPINION

■ The question presented for our review, one of first impression in Illinois, is whether a parent's petition for removal constitutes a petition to modify custody governed by section 610 of the Dissolution Act when the judgment for dissolution of marriage awards both parents joint custody. We conclude that a removal petition, filed by the residential custodial parent, is not a petition for modification of custody where both parents are granted joint custody of the child.

Section 603.1 of the Dissolution Act (Ill. Rev. Stat. 1983, ch. 40, par. 603.1 (repealed by Public Act No. 84—795 (1985 Ill. Laws 767), and replaced by section 602.1 of the Dissolution Act (Ill. Rev. Stat.

1985, ch. 40, par. 602.1))) provides in pertinent part that an award of joint custody may be modified or terminated under the standards of section 610. (Ill. Rev. Stat. 1983, ch. 40, par. 603.1(c).) Under section 610 of the Act, any custody award (sole or joint) may be modified by the trial court within two years from the date such judgment is entered only where the moving parent demonstrates in his or her petition that the child's current environment seriously endangers the child's physical, emotional, mental, or moral well-being. (Ill. Rev. Stat. 1983, ch. 40, par. 610(a).) A custody determination may be modified more than two years following judgment where the moving parent demonstrates that there has been a substantial change in circumstances in the child's environment and that the proposed modification would be in the child's best interests. Ill. Rev. Stat. 1983, ch. 40, par. 610(b).

A petition for removal of a child from the jurisdiction of this State is governed by section 609 of the Dissolution Act. (Ill. Rev. Stat. 1983, ch. 40, par. 609.) Under this section, a trial court "may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children." Ill. Rev. Stat. 1983, ch. 40, par. 609.

Carol argues that a removal petition by a residential custodial parent pursuant to a joint-custody award should be construed as a petition to modify custody. She claims that this interpretation is appropriate because the allowance of a removal petition will so substantially affect the nonresidential custodial parent's opportunity to interaction with the child that the joint custody will be reduced to a nullity.

Our analysis of the relevant provisions of the Dissolution Act and its policy does not support the view suggested by Carol. The Act makes a clear distinction between removal petitions and requests to modify custody awards. (See Ill. Rev. Stat. 1983, ch. 40, pars. 609 (removal), 610 (modification); see also Ill. Rev. Stat. 1983, ch. 40, par. 607 (visitation).) There is nothing in the Act or its jurisprudential application to indicate that this distinction applies only to sole-custody awards, but not to joint-custody awards, as Carol's argument necessarily assumes. Moreover, if we were to adopt Carol's reasoning, it would follow that where one parent is granted traditional, sole custody and the other parent visitation rights, removal of the child by the custodial parent to a distant State or foreign country could also so substantially hamper the noncustodial parent's opportunity to see the child that, in effect, the noncustodial parent might be deprived of virtually any meaningful contact with the child. If Carol's analysis were

to be adopted, removal under these similar circumstances would also constitute a "modification" or "termination" of custody under section 610. This contention has been rejected by the courts, however (see *In re Custody of Mueller* (1979), 76 Ill. App. 3d 860, 395 N.E.2d 677), and we find Carol's argument similarly unpersuasive.

Carol's contention is founded on the premise that removal will adversely affect her involvement with Bradford to such a degree that she will no longer, in fact, have joint custody of her son. From this she concludes that the removal petition constitutes an attempt to modify custody. The fact that Carol's custodial rights will be *affected* by removal (*cf. People v. Harrison* (1980), 82 Ill. App. 3d 530, 402 N.E.2d 822), does not also mean that her rights will be *modified* as a matter of law pursuant to section 610 of the Dissolution Act by removal of Bradford to Colorado. (See *In re Custody of Myer* (1981), 100 Ill. App. 3d 27, 426 N.E.2d 333; see also *In re Rider* (1983), 113 Ill. App. 3d 1000, 447 N.E.2d 1384.) Instead, a joint-custody award is "modified" under section 610 where there is a "change in physical [*i.e.*, residential] custody, despite the retention of joint custody." (*In re Marriage of Gargus* (1981), 97 Ill. App. 3d 598, 606, 423 N.E.2d 193; see *In re Marriage of Kartholl* (1986), 143 Ill. App. 3d 228; *Kraft v. Kraft* (1982), 108 Ill. App. 3d 590, 439 N.E.2d 491, *appeal denied* (1982), 92 Ill. 2d 568; *In re Marriage of Friedman* (1981), 100 Ill. App. 3d 794, 427 N.E.2d 261; see also *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 441 N.E.2d 1221, *appeal denied* (1983), 92 Ill. 2d 574; *In re Marriage of Potts* (1980), 83 Ill. App. 3d 518, 404 N.E.2d 446; *Gallagher v. Gallagher* (1978), 60 Ill. App. 3d 26, 376 N.E.2d 279.) Cases from other jurisdictions have adopted a similar view. (See, *e.g., Bloss v. Bloss* (Ariz. Ct. App. 1985), 147 Ariz. 524, 711 P.2d 663; *In re Marriage of Frederici* (Iowa 1983), 338 N.W.2d 156; *Rusin v. Rusin* (1980), 103 Misc. 2d 534, 426 N.Y.S.2d 701; *Olson v. Olson* (N.D. 1985), 361 N.W.2d 249; see also *In re Marriage of Paradis* (Mont. 1984), 689 P.2d 1263; *In re Marriage of Gordon* (Minn. 1983), 339 N.W.2d 269; *In re Marriage of Hegerle* (Minn. App. 1984), 355 N.W.2d 726; *In re Marriage of Sumner* (Minn. App. 1984), 353 N.W.2d 251; *Bazant v. Bazant* (1981), 80 A.D.2d 310, 439 N.Y.S.2d 521.) As the court observed in *Rusin*, "Mere miles in itself does not nullify the beneficial aspects of joint custody." *Rusin v. Rusin* (1980), 426 N.Y.S.2d 701, 703.

In our view, the possibility that removal of a child from the jurisdiction of this State to another may adversely affect the noncustodial parent's interaction with the child does not compel the conclusion that a removal petition is, as a matter of law, a petition for modification of

custody. Instead, the impact of removal upon the rights of the nonresidential custodial parent is a significant and important factor the trial court considers in its adjudication of whether removal would be in the child's best interests.

■ Thus, where removal to a distant State will substantially alter the parent's involvement with the child, it is for the trial court to examine the potential harm to the child which may result. (See, *e.g., In re Marriage of Siklossy* (1980), 87 Ill. App. 3d 124, 409 N.E.2d 29, *appeal denied* (1980), 81 Ill. 2d 606; *In re Marriage of Burgham* (1980), 86 Ill. App. 3d 341, 408 N.E.2d 37.) Similarly, the fact that less than two years has elapsed since the trial court's initial custody determination is also a matter for the trial court to consider in its examination of whether removal would serve the best interests of the child. See, *e.g., In re Marriage of Brady* (1983), 115 Ill. App. 3d 521, 450 N.E.2d 985.

The policy of the Dissolution Act in custody matters, stated explicitly in the Act in its recent amendment as well as in prior judicial interpretation of the Act, is, *inter alia,* to "secure the maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of the children during and after the litigation." (Ill. Rev. Stat. 1985, ch. 40, par. 102(7) (added by Pub. Act No. 84—795 (1985 Ill. Laws 767)).) "The court shall presume that the maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of their child is in the best interests of the child." Ill. Rev. Stat. 1985, ch. 40, par. 602(c) (added by Pub. Act No. 84—795 (1985 Ill. Laws 767)); see also Ill. Rev. Stat. 1985, ch. 40, par. 602(a)(3); *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164; *Anderson v. Anderson* (1975), 32 Ill. App. 3d 869, 336 N.E.2d 268.

■ A trial court's examination of a removal petition is guided by this policy in the same manner and to the same degree as any other petition regarding parental involvement with the child that is presented for the court's adjudication. (See Ill. Rev. Stat. 1983, ch. 40, pars. 602, 603.1, 607, 609, 610; see generally *In re Marriage of Lichtenstein* (1986), 139 Ill. App. 3d 881, 487 N.E.2d 1293.) Moreover, it is incumbent upon the party who seeks such removal to establish that removal would serve this policy of maximum parental involvement, in order to serve the child's best interests. (See Ill. Rev. Stat. 1983, ch. 40 par. 609; *In re Marriage of Brady* (1983), 115 Ill. App. 3d 521, 450 N.E.2d 985; *In re Marriage of Feliciano* (1981), 103 Ill. App. 3d 666, 431 N.E.2d 1120; *In re Marriage of Burgham* (1980), 86 Ill. App. 3d 341, 408 N.E.2d 37.) Thus it is the province of the trial court to de-

termine whether removal of Bradford from Illinois to Colorado would permit a degree of involvement and cooperation between Michael, Carol, and Bradford that would foster their son's physical, mental, moral and emotional well-being, in the context of the circumstances presented here. See, *e.g., Bloss v. Bloss* (Ariz. Ct. App. 1985), 147 Ariz. 524, 711 P.2d 663; *Yannas v. Frondistou-Yannas* (1985), 395 Mass. 704, 481 N.E.2d 1153.

We do not subscribe to the view that joint custody is, in the words of the trial court, "just a placebo." Particularly in light of recent amendments regarding joint custody to the Dissolution Act (see Ill. Rev. Stat. 1985, ch. 40, par. 602.1, added by Pub. Act 84—795, effective January 1, 1986), joint custody remains a viable and distinct custody award wherein both parents, by agreement or upon court order, share parental decision-making regarding matters such as the child's education, religious training, and health care, regardless of the amount of "parenting time" accorded to either parent. (See Ill. Rev. Stat. 1985, ch. 40, par. 602.1; Ill. Rev. Stat. 1983, ch. 40, par. 603.1; see also, *e.g., In re Marriage of Manuele* (1982), 107 Ill. App. 3d 1090, 438 N.E.2d 691.) This parental cooperation may be more easily facilitated where all concerned reside in close geographic proximity in the same State. Therefore, where both parents have joint custody of the child, a parent's request to remove the child from this jurisdiction should be given particularly close judicial scrutiny. The promotion of parental cooperation and involvement, however, does not in our opinion justify the imposition of section 610's requirements upon the removal petition of every joint-custodial parent who wishes to reside with the child beyond the boundaries of the State of Illinois.

We recognize that removal of Bradford from Illinois would, in all likelihood, require a change in Carol's present visitation schedule and involvement in his parenting on a day-to-day basis. Whether this change would serve Bradford well or ill is a matter for evidentiary hearing before the trial court. We decline to adopt the view that this alteration, *ipso facto* and as a matter of law, mandates the adherence to a legal standard which would transform all removal petitions into requests for modification of custody whenever parties are granted joint custody of a child. Under Carol's analysis, a parent who has personal care and physical residence of a child, and who wishes to change residence to a nearby location over State lines (*e.g.,* from East St. Louis, Illinois, to St. Louis, Missouri, or from Chicago, Illinois, to Hammond, Indiana), would be required to comply with the prerequisites of section 610. In our view, such a result would be imprudent and without justification. The Dissolution Act is tailored to permit a

trial court sufficient flexibility to fashion appropriate custody awards that balance the oftentime divergent interests of a residential custodial parent, a nonresidential custodial parent, and their children. (See, *e.g., Temple v. Temple* (1977), 52 Ill. App. 3d 851, 368 N.E.2d 192.) This objective would be poorly served were we to adopt the position that a removal petition is, for the purposes of legal analysis, a petition for modification of custody whenever parents are granted joint custody.

For the reasons set forth above, we resolve the certified question of the trial court as follows:

1. Michael's petition for removal which was filed less than three months after the date of the court's joint custody judgment is *not* governed by section 603.1 and section 610 of the IMDMA;

2. Michael's petition for removal is *not* fatally deficient as a matter of law as a result of its failure to include affidavits showing that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health, as required by section 610 of the Dissolution Act.

In view of this disposition, we need not consider appeal No. 85—2113, which is Carol's application for permissive interlocutory appeal based upon Supreme Court Rule 306(a)(1)(v). (87 Ill. 2d R. 306(a)(1)(v).) Accordingly, her petition for such permission is denied, and appeal number 85—2113 is hereby dismissed.

No. 85—2113—Application for leave to appeal denied; cause dismissed.

No. 85—2191—Appeal granted; certified question answered; cause remanded for further proceedings.

JIGANTI and JOHNSON, JJ., concur.