2024 IL App (1st) 231695-U

FIRST DIVISION
January 29, 2024

No. 1-23-1695

**NOTICE:**  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| MARCUS ADAMS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2015 D 011681 |
| | ) | |
| MARIAN OGUNOSHUN, | ) | The Honorable |
| | ) | Michael Forti, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

*HELD*:  Trial court's grant of appellee's petitions to relocate and denial of appellant's motions for rule to show cause affirmed as supported by the record and the court's proper application of relevant legal principles to circumstances presented.

¶ 1    Plaintiff-Appellant Marcus Adams (appellant) appeals, *pro se*, from a trial court order granting defendant-appellee Marian Ogunoshun's (appellee) petitions to relocate the parties' minor child, M.A., from Illinois to New Jersey and denying his motions for rule to show cause.  He contends that the court erred in refusing to conduct a hearing on his motions

which he insists were emergencies, and that it likewise erred in granting appellee's petitions as she did not the follow statutory requirements to properly relocate M.A. He asks that we enter an order demanding appellee return M.A. to Illinois and provide him with makeup visitation time, holding appellee in contempt for violating a court order and unlawfully removing M.A., requiring appellee to pay all his attorney fees, and granting him a restraining order against appellee from taking M.A. out of state. Appellee has filed a brief in this matter, *pro se*, and the Loyola ChildLaw Clinic has filed a brief on behalf of M.A., both contending that the trial court's order was proper. For the following reasons, we affirm.

¶ 2                                                   BACKGROUND

¶ 3        We note that appellant has provided this Court with only the common law record and a short report of proceedings from a hearing that occurred in June 2016 officially dissolving the parties' marriage. He has not provided us with a report of proceedings or bystander's report from the hearing that resulted in the order from which he appeals. Accordingly, the following are the pertinent facts we can glean from what little is in the record before us applicable to the instant cause.

¶ 4        The parties were married in 2013 and had one child together, M.A., who was born in 2013. Leading to their 2016 dissolution, the relationship between the parties grew contentious, with both filing multiple applications for emergency orders of protection against the other, as well as cross-motions for child support, custody, the return of personal property, etc. Following dissolution and settlement, the parties continued to file repeat motions over the next several years regarding custody and child support, as well as many orders of

protection upon assertions of domestic violence. The record indicates that M.A. spent time over the years living on and off in the care of each party from time to time.

¶ 5　　　　At some point, appellee moved to New Jersey.[1] On March 17, 2022, she filed a petition in the circuit court of Cook County seeking M.A.'s relocation from Illinois to New Jersey to live with her. In her petition, she detailed why she believed this was in M.A.'s best interest, including assertions of appellant leaving M.A. home alone or with family members so he could go out of town, verbal and mental abuse, M.A.'s expressed wishes, appellee's sole management of M.A.'s schedule including school and doctors' appointments, and physical abuse by appellant against appellee. Some months later, in August 22, 2022, while M.A. was now residing with appellee in New Jersey,[2] appellee filed a second petition to relocate M.A., similar to the first. She also moved for a temporary parenting plan agreement, which included provisions for M.A. to visit appellant in Illinois during school breaks and summer vacation until a new, permanent plan could be established.

¶ 6　　　　The next day, the trial court ordered the parties to mediation; it also appointed a child representative for M.A.[3] On August 25, 2022, appellant, who was represented by counsel, filed an "emergency petition for rule to show cause and objection to [appellee]'s petition to relocate and [appellee]'s temporary parenting plan." In it, he asserted that appellee had violated their parenting plan and that he had not received a copy of her petition to relocate

---

[1] The record indicates appellee has remarried and she and her spouse have multiple children together.

[2] It is not entirely clear when M.A. began living with appellee in New Jersey. From what we can gather, it may have been as early as June 2022, at the end of M.A.'s school term. At that time, and by agreement of the parties, the record indicates M.A. went to stay with appellee. Ultimately, she did not return to Illinois.

[3] That representative is the same representative who has filed an appellee's brief in this matter on behalf of M.A.

nor a written notice of relocation in the manner required by statute. He further asserted that the move would substantially impair his involvement with M.A. and that the court was required to hear "any and all relevant evidence" before determining whether relocation was in M.A.'s best interest. Appellant then amended his emergency petition to include a request for the "immediate return" of M.A. to Illinois. In November 2022, the court heard appellant's motions and concluded they were not emergencies; additionally, it granted appellant parenting time and ordered family mediation services, evaluations, and home studies to be conducted of the parties and M.A., with Family Support Services (FSS) to provide a recommendation concerning, among other topics, M.A.'s relocation.

¶ 7       As the litigation progressed, the parties continued to file additional motions, including more motions for protective orders, to expedite adjudication, and the return of M.A. FSS completed its home study of appellant. In her report, the FSS caseworker began by detailing her interview of appellant, which included his version of events with respect to his relationship with appellee, their breakup, his relationship with M.A, and his and appellee's parenting styles. Appellant stated to the caseworker that appellee had filed the petition for relocation in March 2022 and that he wanted M.A. to reside with him full-time with appellee having parenting time during school breaks. Based on her investigation, the caseworker found that appellant's home was "somewhat appropriate," and that appellant reported he had an indicated case with the Department of Children and Family Services (DCFS), one incident of domestic violence against him (involving appellee) accompanied by an order of protection, and a history of multiple traffic violations including a conviction for driving an uninsured vehicle. The caseworker did note a concern with respect to appellee allegedly

retaining residential care of M.A. in potential violation of the parties' parenting agreement. Ultimately, the report recommended that appellant enroll in reunification therapy, attend a parenting class, and complete an anger management assessment, and stated that FSS "is unable to make a recommendation concerning parting time/responsibility or relocation of the child in cases where there is a history of abuse and neglect indicated by DCFS."

¶ 8    A document in the record next shows that the trial court set a pretrial date of June 26, 2023, and two trial dates of June 27-28, 2023. There is no transcript from any of these dates. On July 10, 2023, the court issued a written order upon "[appellee's] motion for relocation and [appellant's] motion for rule to show cause" following an "abbreviated trial," which it stated had been agreed to and attended by the parties, appellant's counsel, and the child representative. In this order, the court indicated that it had considered the home study reports and statements made before it by appellant, appellee, and the child representative. It ordered appellant to immediately begin reunification therapy with M.A. via zoom and instructed the parties to communicate appropriately with each other. The court stated it was taking the parties' motions under advisement and would provide a ruling on August 31, 2023.

¶ 9    The next pertinent document in the record is the order appealed from: a trial court order entered on September 8, 2023, in answer to the motions of the parties it had taken under advisement following the June 2023 trial. After reviewing the procedural facts of the case, the court made several findings. First, while it did not "condone" appellee's actions to relocate M.A. without court approval, it held that she "did not willfully, contumaciously, and without justification violate any orders of the Court" and, thus, refused to find her in indirect civil contempt. Next, with respect to the petitions to relocate, the court enumerated all the

statutory factors it was to consider and examined the home study reports it had ordered. It noted that while FSS had found appellant's home "somewhat appropriate," appellee's home study[4] found her home to be " 'clean and free of safety hazards' " and that it constituted a " 'loving and cohesive family unit' " and a " 'loving, nurturing, and stable environment.' " Further, the court noted that in her interview,[5] M.A. disclosed to the reporter that while living with appellant in Illinois, he had " 'choked her and said "mean things" about [appellee],' " and M.A. (now 10 years old) expressed a desire to remain with appellee, her stepfather and stepsisters in New Jersey. The court also noted that reunification therapy, which had been ordered for appellant by both it and FSS, had never taken place. From all this, the court concluded that "it is in [M.A.]'s best interest to remain with [appellee] in New Jersey." Accordingly, the court granted appellee's petitions for relocation, denied appellant's motions for rule to show cause, and entered a visitation schedule.[6]

¶ 10                                    ANALYSIS

¶ 11        As noted, appellant challenges the propriety of the trial court's September 8, 2023 order and presents two contentions on appeal. First, he claims that the court erred in granting appellee's petitions to relocate because she "failed to file a petition *** and wait for a court ruling" and "failed to follow any of the steps laid out in section 609.2" of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/609.2 (West 2020)) governing

---

[4] Appellee's home study was conducted by an approved agency in New Jersey; appellant did not include it in the record on appeal.

[5] Likewise, appellant has not included the report regarding M.A.'s interview (presumably conducted in New Jersey) in the record on appeal.

[6] For the record, the court also addressed other miscellaneous matters in its written order, including responsibility for travel expenses, access to school information and educational and medical records, and M.A.'s extracurricular activities.

relocation, including filing a petition and giving him notice of it, providing him with the address where M.A. would be in New Jersey, and affording him "the chance to object and have a hearing on if relocation would be allowed." He further claims that because appellee "failed to show by a preponderance of evidence that relocation was in the best interest of M.A.," the court did not properly evaluate M.A.'s best interest since it did not consider "the ability of each parent to facilitate a close and continuous relationship" with the child, all of which has led to the diminishment of his relationship with M.A. and has resulted in the offense of "child abduction." Second, he claims that the trial court erred in failing to hold hearings on his two motions for rule to show cause and in failing to do so immediately upon his filing of them, as he had labeled them "emergencies." He insists that the court improperly found them not to be emergencies and that it denied them "with out [*sic*] any reason or explanation" and that it "never had a hearing" on them. We disagree.

¶ 12    As a threshold matter, and as we have already pointed out, the record on appeal is incomplete. While the written order appealed from is included, the hearing from which it originates, and which the trial court specifically mentions took place, with the explicit agreement of the parties, no less, is not; neither is a bystander's report. It is axiomatic that the burden to provide a complete record from which meaningful review of a cause can properly be taken lies wholly, and solely, with an appellant. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984); *In re Estate of Jackson*, 354 Ill. App. 3d 616, 620 (2004). In the absence of this, the appellant suffers whatever the consequences, including the automatic presumption that the trial court's order had a sufficient factual basis and conformed with the law, as well as the resolution of all doubts arising from the incompleteness of the record

against him.  See *Foutch*, 99 Ill. 2d at 391-92; *Jackson*, 354 Ill. App. 3d at 620 (in absence of complete record, this Court presumes trial court's order had sufficient factual basis and conformed to the law, and thereby resolves all doubts due to this failure against the appellant).  For these reasons, and particularly because appellant's claims assert error on the trial court regarding what it did or did not consider at the hearing at issue, it is entirely within our prerogative to presume its written order resulting from that hearing is correct and to immediately end this appeal.  See, *e.g.*, *Foutch*, 99 Ill. 2d at 392.  However, we are mindful that this cause involves a minor and her custody, and that we ultimately have, as part of the record, the trial court's written order, which is extensive and clearly outlines the considerations for its rulings—the rulings appellant challenges.  Therefore, we choose, in our discretion, to reach the merits of this appeal.  See, *e.g.*, *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's procedural violations).

¶ 13        With that said, however, we affirm this appeal, as none of appellant's contentions, and nothing in the record before us, warrant the reversal of the trial court's order granting appellee's petitions to relocate M.A. and denying his motions for rule to show cause.

¶ 14        In his first contention, appellant asserts error upon the trial court for granting the petitions to relocate because, according to him, the court ignored appellee's violations of the pertinent statute which included not filing a petition, giving him notice, or disclosing her address; failed to hold a hearing; and failed to properly evaluate M.A.'s best interest which appellee did not prove by a preponderance of the evidence included relocation.  Briefly, the standard of review in relocation cases is manifest weight of the evidence.  See *Kenney v. Strang*, 2023

IL App (1st) 221558, ¶ 33 (citing *Kimberly R.*, 2021 IL App (1st) 201405, ¶ 75, and *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32). Precisely because these adjudications involve the best interest of the child, a trial court's decision to grant a petition to relocate is entitled to marked deference, since it had the superior opportunity to observe the parents and child. We will not disturb its findings unless the opposite conclusion is clearly evident or its factual findings are indisputably erroneous. Most critically, " ' " [t]he presumption in favor of the result reached by the trial court is always strong and compelling in this type of case.' " ' " *Kenney*, 2023 IL App (1st) 221558, ¶ 33 (quoting *Fatkin*, 2019 IL 123602, ¶ 32, quoting *In re Marriage of Eckert*, 119 Ill. 2d 316, 330 (1988), quoting *Gallagher v. Gallagher*, 60 Ill. App. 3d 26, 31-32 (1978))); accord *Kimberly R.*, 2021 IL App (1st) 201405, ¶ 75.

¶ 15        First, we simply do not understand appellant's claim that the trial court's grant of the petitions was erroneous because it failed to hold a hearing. While we very much wish a transcript of the hearing was in the record on appeal so we could point directly to it to immediately refute this assertion, alas, it is not. But, again, this was appellant's burden. More critically, however, just because he failed to include a transcript of the hearing in the record on appeal does not mean, as he would perhaps hope we would conclude, that hearing did not take place. In contrast, what *is* in the record here is otherwise very telling. For one, there is a document demonstrating that the trial court set a pretrial hearing date of June 26, 2023, and two trial dates of June 27-28, 2023. For another, there is its July 10, 2023 written order stating that, upon "[appellee's] motion for relocation and [appellant's] motion for rule to show cause" following an "abbreviated trial" which was agreed to and attended by the parties and the child representative, it considered all their oral statements before it as well as

the evidence provided and would be taking the matter under advisement. And, there is the court's final written order of September 8, 2023, which begins by referencing that it comes in answer to the motions of the parties which it had taken under advisement following the June 2023 trial. In our view, the record, though not complete, clearly rebuts any assertion by appellant that a hearing of the petition to relocate did not take place.

¶ 16    Similarly, we do not find merit in appellant's assertions that the trial court erred in granting the petition because appellee violated the relocation statute by not filing one, giving him notice, or disclosing the address where M.A. was. Undeniably, appellee filed a relocation petition. In fact, she filed two: one in March 2022 (when M.A. was still in Illinois) and one in August 2022 (after M.A. had been living with her). These are in the record on appeal. Additionally, for as many times in his brief that he claims appellee did not file a petition, appellant admits she did and goes on to cite and refute its contents. Next, with respect to her address, the record is clear that appellant knew where M.A. was, *i.e.*, where she was staying with appellee. During the entire course of the litigation, and particularly, even before appellee filed her petitions to relocate, there are multiple indications in the record that M.A. visited appellant in Illinois and that appellant had the opportunity to visit M.A. in New Jersey; this was even court-ordered during the proceedings. Clearly, the court knew for a very long time where appellee resided (thanks to the multiple and repeated motions for orders of protection that preceded the petitions for relocation) and where M.A. was. For appellant to now state he did not know or that this was a problem is seemingly disingenuous.

¶ 17    Even were this not so, and even considering his last point of error asserting appellee did not give him proper statutory notice of her petition for M.A.'s relocation, his claims do not

warrant reversal.  This is because, while appellant is correct that section 609.2(d) of the Act does require the relocating parent to provide "60 days' written notice [to the other parent] before the relocation" and that this notice must contain the intended date of relocation and the address of the new residence, it further states that a court "may consider a parent's failure to comply with the notice requirements of this Section without good cause *** as a factor in determining whether the parent's relocation is in good faith."  750 ILCS 5/609.2(d) (West 2020).  The court's September 8, 2023 order evinces that the trial court here was keenly aware of this and that it took any failure to comply on appellee's part into consideration.  It explicitly noted that while it did not "condone" her relocation of M.A. without official court approval, it found that under the circumstances, she "did not willfully, contumaciously, and without justification violate any orders of the Court" and refused to find her in indirect civil contempt.  As this determination was within the court's province, and as it shows the court clearly considered the component of notice pursuant to statute, without more, we do not find error here.  See *Kenney*, 2023 IL App (1st) 221558, ¶ 54-55 (relocating parent's violation of section 609.2(d)'s statutory notice requirements does not require automatic denial of petition or preclusion from relief sought; the only consequence is that trial court "may consider" it as a factor in determining good faith with respect to relocation and once it does so, and its conclusion is supported by the record, there is no error).

¶ 18        Finally, we cannot accept appellant's argument that the trial court erred in granting the petition because it failed to properly evaluate M.A.'s best interest based on his view that appellee failed to prove by a preponderance of the evidence that this included relocation.  Appellant's claim here is nothing more than his own evaluation of the evidence presented.

However, this is the trial court's job, not his. And, the record shows it did its job without error. In its September 8, 2023 order, it detailed the procedural history of this matter. It then enumerated all the statutory factors it was to consider. It discussed and compared the parties' home studies and M.A.'s interview, which included her age, her allegations of abuse against appellant, and her desire to live with appellee. It also noted that appellant, who admitted to having an indicated DCFS case, a cited incidence of domestic violence, and a driving conviction, had not even begun the reunification therapy that had long been ordered of him by it and FSS. From all this, the court concluded that "it is in [M.A.]'s best interest to remain with [appellee] in New Jersey." The record clearly demonstrates that the court here did evaluate M.A.'s best interest and properly determined that this included relocation.

¶ 19    Accordingly, we hold, contrary to appellant's cited assertions, that the trial court did not err in granting appellee's petitions to relocate M.A.

¶ 20    Appellant's second, and final, contention on appeal is that the trial court erred in failing to hold hearings on his two motions for rule to show cause and in failing to do so immediately, since he labeled them "emergencies." He takes great issue with the court's decision finding them not to be emergencies and in eventually denying them "with out [*sic*] any reason or explanation" and with "never ha[ving] a hearing" on them.

¶ 21    For the record, the bulk, and crux, of appellant's argument about his motions for rule to show cause come from his reply brief on appeal. Accordingly, we could very well consider this argument forfeited and not address it. See *In re Estate of O'Gara*, 2022 IL App (1st) 210709, ¶ 26 (arguments made in reply brief but not made in original brief are forfeited and need not be considered by the reviewing court). However, while he does not discuss it at all in his opening brief, he does list it

therein as a ground for appeal.  Because of this, and for the sake of completeness, we choose to review this point of claimed error, as well.

¶ 22    Again, however, we find no merit to his argument, let alone any that would trigger reversal of the order at issue.

¶ 23    We repeat, briefly this time, our inability to understand appellant's continued mischaracterization of the trial court's actions.  In direct contradistinction to his statements, the trial court undeniably held a hearing on his motions for rule to show cause.  The court mentions them as two of the four motions it was taking under advisement following the June 2023 trial, refers to them at the outset of its final written order, and explicitly renders holdings on them at the end of that order.  The court also noted that a trial was conducted with appellant's consent and that appellant (and his counsel) was present.  Again, all indications in the record are that a hearing on them took place, at the same time the court heard appellee's petitions; any doubt about that (of which we have none) must be resolved against appellant since he failed to provide the appropriate transcript.

¶ 24    Next, we have no right to declare error upon a trial court for not considering a motion filed by a litigant to be an emergency simply because the litigant labeled it as such.  A trial court's docket is within its own inherent power to control and manage, not ours.  See *e.g.*, *Richter v. Prairie Farms Dairy, Inc*., 2016 IL 119518, ¶ 28.  We understand, particularly in cases involving children, that a parent, like appellant here, would want a trial court to give him answers and an immediate disposition in the matter.  However, the trial court did not see this particular case as emergent, and the record supports its conclusion.  In addition to demonstrating that it was common for M.A. to live on and off in the care of each party from

time to time over the years, we note that M.A. had been staying with appellee for several months before appellee filed the second petition for relocation. Appellant did not file his first motion for rule to show cause until after that—after her *second* petition. Also, appellant's rules to show cause demanded the return of M.A. to his custody; this, amid a multitude of applications for plenary orders of protection filed by appellee on her and M.A.'s behalf, many of which were granted by trial courts. Combined with M.A.'s revelation to the home study reporter that appellant choked her, and appellant's own admission in his home study that he has an indicated DCFS case and was the perpetrator of an incident of domestic violence, it was obvious that the trial court wanted, and needed, time to make an appropriate and informed decision about M.A.'s custody. Moreover, the record shows M.A. was in a safe, stable, nurturing and loving environment while the legal proceedings were taking place, from which there was no need to remove her. Simply because appellant entitled his motions for rule to show cause "emergencies" did not make them so, nor did they require the trial court to consider them as such, grant them, and/or return M.A. to appellant, especially in light of all these circumstances.

¶ 25    Finally, we take great issue with appellant's assertion that the court erred because it denied his motions for rule to show cause "with out [*sic*] any reason or explanation." The record directly refutes this. The court issued a lengthy, detailed, and well-reasoned decision in this matter wherein it outlined the applicable statutory provisions and the factors it was required to consider and then closely examined the facts presented before it. After explaining everything—the procedural posture, the statutes, and its findings—it denied appellant's motions. Just because the result was not one appellant was hoping for does not

mean the trial court erred or provided no explanation. It did; it just was not one appellant wanted to hear.

¶ 26   Therefore, we hold that, contrary to appellant's cited assertions, the trial court did not err in denying his motions for rule to show cause.

¶ 27                                    CONCLUSION

¶ 28   We are certain appellant loves M.A. and genuinely wants her to live in Illinois so he can maintain a close relationship with her. However, "[t]here is no perfect solution inherent in relocation cases, which are markedly difficult, no matter the outcome." *Kenney*, 2023 IL App (1st) 221558, ¶ 68. We sympathize, and we hope appellant takes advantage of every opportunity he has to foster that relationship in an appropriate way. But, here, we find that the trial court's decision granting appellee's relocation petitions and denying his motions for rule to show cause was proper and reasonable based on the record.

¶ 29   Accordingly, for all the foregoing reasons, we affirm the judgment of the trial court.

¶ 30   Affirmed.