**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230416-U

Order filed February 5, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| JAMES PAULEY, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-23-0416 |
| and | ) | Circuit No. 20-D-2288 |
| | ) | |
| JANE PAULEY, | ) | Honorable |
| | ) | Richard D. Felice, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Holdridge and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court's denial of mother's petition to relocate to Nevada was not against the manifest weight of the evidence.

¶ 2     Respondent, Jane Pauley, appeals the Du Page County circuit court's decision to deny her petition to relocate to Nevada, arguing that the court placed improper weight on certain factors and that its choice to weigh certain factors as neutral or in petitioner, James Pauley's, favor were against the manifest weight of the evidence. For the reasons set forth below, we affirm.

## I. BACKGROUND

¶ 4       Jane was married to James from 2013 to 2022. They bore two children from the marriage, and James adopted Jane's older son from a prior marriage.

¶ 5       During the dissolution proceedings, Jane and James entered into an agreed allocation judgment. The judgment provided that Jane and James would share decision-making regarding the children and that Jane was solely responsible for all tuition costs for the children's private schooling. It further provided that during the school year, the children would primarily reside with Jane, and James would receive parenting time every Tuesday starting after school until 7:00 p.m., as well as alternating Thursdays starting after school until 7:00 p.m. The children would reside with James on alternating weekends, beginning Thursday after school until Sunday at 7:00 p.m. The parties would equally share parenting time when school was not in session.

¶ 6       The judgment for dissolution was filed on May 19, 2022. The judgment stated that Jane "lacked sufficient income and financial resources to be self-supporting," and James would pay Jane 19 months of maintenance in addition to child support.

¶ 7       On November 21, 2022, Jane filed a notice of intent to relocate. James filed an objection in response. Jane then filed a petition for relocation alleging that she and her fiancé, Ariel Belkin, wished to move to Summerlin, Nevada. They intended to purchase a home in a neighborhood located in a school district where the schools had ratings of 9 out of 10, according to greatschools.org. Jane alleged that she would be able to better care for the children in Nevada, they would have access to good schools, and her plan to move and enroll the children in school would coincide with the time they would no longer be attending their private school. The children's scholarship for tuition was no longer available and she could not afford to pay for the private school without it. She further alleged that she and Belkin both had family in California

2

and that her mother intended to move to Summerlin as well. Additionally, James repeatedly expressed interest in moving to a different state, and she believed that he would be able to move to Nevada, too. She asserted that any objection he made now was not in good faith.

¶ 8        James's response to the petition alleged that the children already enjoyed a high standard of living in Wheaton. They had a good home and a good education. He stated that if the scholarships for their private school tuition was no longer available, he would be willing to contribute to the costs to keep them enrolled. Additionally, he was able to see the children often, and the impact on his relationship with the children would be "monumental" if the relocation occurred. He argued that no alternative schedule could be fashioned to replace that time.

¶ 9        A guardian *ad litem* (GAL) was appointed and distributed his opinion and recommendations on March 13, 2013. Ultimately, the GAL recommended the relocation be allowed.

¶ 10        The hearing on Jane's petition took place over several days spanning from July 20, 2023, until August 9, 2023. The GAL testified regarding his recommendation. Out of the eleven statutory factors to consider for relocation, the GAL found that five favored Jane, two favored James, and four were neutral. See 750 ILCS 5/609.2(g) (West 2022).

¶ 11        Relevant to this appeal, the GAL again recommended relocation. During his testimony, he noted that James had a desire to also leave Illinois and that Belkin's children lived in California, which would make moving to Nevada beneficial for him. Speaking on educational opportunities, the GAL believed this consideration was neutral because the schools in both areas were "comparable." The GAL noted that he was familiar with the schools in which the children were currently enrolled, but his knowledge of Nevada schools was limited to that which he

gleaned from online research. The GAL also testified that Nevada had a more established and structured gifted program than that available in the children's current schools.

¶ 12    The GAL also believed that the court could fashion a reasonable allocation of parenting if relocation occurred and provided a recommended schedule for parenting time. It allocated to James a substantial period of time during school breaks because he would not be able to exercise parenting time often during the school year due to the distance. Further, the GAL opined technology allowed for long distance parenting, which would allow James to continue exercising parental responsibilities even when he was not physically present. He also believed his recommended schedule would still provide James ample parenting time with the children in order to minimize the impact of his relationship with them if relocation occurred. Finally, when questioned if there was anything else the court should consider, the GAL noted that both Jane and James could work from anywhere, Belkin was financially stable, and that James's significant other was unwilling to relocate.

¶ 13    In addition to the GAL, Belkin, Jane, James, James's girlfriend, Jane's mother, James's mother, and one of James's neighbors testified as to the parties' relationships with the children, their current living situation, and the potential situation waiting for them in Nevada.

¶ 14    Belkin testified that he and Jane were engaged and had already purchased a home in Summerlin that had four bedrooms and plenty of space for both Jane's children and his two daughters when they came during his parenting time. He stated that a reason they chose to move to Nevada was because it was near his children in California, and it was his understanding that the location would work for James. Belkin would primarily travel to Los Angeles during his parenting time with his children, but his daughters would come to Nevada during his parenting time as well.

¶ 15        Jane testified that she had considered relocating to California where Belkin's daughters lived, but she decided to choose another location when James indicated to her that he did not want to live in the state of California. She and James had text message conversations over the years where James suggested moving out of state to a more southern location. In the fall of 2022, Jane wrote James a letter stating that she wanted to relocate to Nevada and hoped that he would move there as well. She would have liked to move in summer 2023 so the children could start the school year there. When asked about the school system in Nevada, Jane testified that she had already confirmed with personnel in the local school district that their oldest son's IEP would be accepted and that their middle child would be accepted into the gifted and talented program. She explained that the gifted program was structured in a way that was not offered at their school in Illinois. Jane testified that James always exercised all of his time with the younger two children but did not with their oldest. She also believed the move to Summerlin would be in all of her children's best interest because of the nice weather, the good school programs, and because she would be happier in Nevada.

¶ 16        James testified that his job is completely remote and that he has no travel or in-office requirements. He stated that if Jane were allowed to relocate, he could work remotely in Nevada or be able to travel around his work schedule to see his children. While he admitted he had a desire to relocate, his proposed locations did not include Nevada.

¶ 17        James also testified that he takes all his parenting time with his youngest two children without Jane's interference, but he sees his oldest less often. He stated that he tries to see his oldest son separately from the younger children and also texts him during the week. James believed he was involved with helping his children with homework during his parenting time and in their extracurricular activities. James also testified that while he was originally against the

5

parochial school his youngest two children attended, he was now willing to pay their tuition if the relocation was denied. His parents lived in the area, and the children saw them regularly. The children also had a relationship with his girlfriend and her family. When asked about his reasons for objecting to the move, he testified that he did not want his children to live so far away, he believed the Nevada schools were inferior, they had several friends and family members where they currently lived, and that the move would interfere with his relationship with them.

¶ 18    On August 16, 2023, the court made an oral ruling denying relocation. The court made specific findings regarding each statutory factor and explained to the parties what evidence it considered when approaching each factor. Of note, the court remarked that it considered the fact that Jane had already purchased property in Nevada knowing her petition was pending and that she did not have any job offers in the area. It also considered the distance, amount of time, and logistics of the children travelling between Illinois and Nevada, as well as how that time travelling would impact the time spent with either parent. While the court acknowledged that James could still have frequent contact with his children if the relocation occurred, it recognized that the quality and type of parenting would change, as it would be more difficult for James to participate in homework, school activities, coaching, and other extra-curricular activities. Finally, the court also noted the parties' financial resources and employment opportunities, the relationships the children had with extended family members, and that relocating would help Jane's fiancé remain close to his own children in California.

¶ 19    Ultimately, the court found that relocation would not be in the children's best interest and denied Jane's petition to relocate. It later entered a written order denying relocation and attached the oral ruling as its reasoning. Jane timely appealed.

¶ 20                                    II. ANALYSIS

¶ 21      A parent with a majority of parenting time or equal parenting time may seek to relocate with the minor children. 750 ILCS 5/609.2(b) (West 2022). If the other parent objects to the proposed relocation, the parent wishing to relocate must file a petition seeking permission to do so. *Id.* § 609.2(f). In determining whether to grant the petition for relocation, the court must base its decision on the best interests of the child. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32.

¶ 22      Section 609.2(g) enumerates the following best-interest factors the court must consider when making its determination: (1) the circumstances and reason for the relocation; (2) the reasons a parent is objecting to the relocation; (3) the history and quality of each parent's relationship with the children and whether either parent has substantially failed or refused to exercise parenting time or responsibilities under the parenting plan or allocation judgment; (4) the educational opportunities for the children at the current and proposed new locations; (5) the presence or absence of extended family at either location; (6) the anticipated impact of the relocation on the children; (7) whether the court will be able to fashion a reasonable allocation of parenting responsibilities between the parents if the relocation occurs; (8) the wishes of the children, based on their maturity and ability to express independent preferences; (9) possible arrangements for the exercise of parental responsibilities appropriate to the parental resources and circumstances, and the children's developmental levels; (10) minimization of impairment to the relationship caused by the relocation; and (11) any other relevant factors bearing on the children's best interests. 750 ILCS 5/609.2(g) (West 2022).

¶ 23      The party seeking relocation must establish by a preponderance of the evidence that the relocation is in the best interest of the child. *In re Marriage of Tedrick*, 2015 IL App (4th) 140773, ¶ 49. In deciding whether relocation is in the child's best interests, a trial court should hear "any and all relevant evidence." *In re Marriage of Eckert*, 119 Ill. 2d 316, 326 (1988). A

determination of the child's best interests cannot be reduced to a simple bright-line test; rather, the decision must be made on a case-by-case basis, based on the circumstances of each case. *Id.* As our supreme court has found, " '[t]he presumption in favor of the result reached by the trial court is always strong and compelling in this type of case.' " *Id.* at 330 (quoting *Gallagher v. Gallagher*, 60 Ill. App. 3d 26, 31-32 (1978)). Such deference is appropriate because the trier of fact has significant opportunity to observe the parents and children and is able to assess and evaluate the individuals. *Id.*

¶ 24   A reviewing court does not reweigh the competing considerations. *In re P.D.*, 2017 IL App (2d) 170355, ¶ 19. We will not reverse the circuit court's determination of what is in the best interests of a child unless it is against the manifest weight of the evidence, and it appears that a "manifest injustice" occurred. *Id.* at 328. A court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent or where its findings are unreasonable, arbitrary, or not based on the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 25   Jane raises various reasons why, in her opinion, the court's order denying relocation is against the manifest weight of the evidence. Out of the eleven statutory factors the court must consider, Jane argues that the circuit court improperly weighed five factors. We address each of these factors in turn.

¶ 26                           A. Reasons for Relocation

¶ 27   Jane argues that the court's categorization of the first factor, the reasons for the relocation, as neutral was against the manifest weight of the evidence. Specifically, she contends that the court faulted Jane for not having visited Summerlin before that year and that she did not have a job offer in the location.

¶ 28        However, the court took several other factors into account beyond this, including several considerations that were in her favor, including the fact that she wished to move in order to be with her fiancé and to be closer to his children. While a court may find enhancement in a child's life by relocating because of a parent's plans to marry, this does not automatically require a finding that the relocation is in the best interest of the child. See *In re Marriage of Davis*, 229 Ill. App. 3d 653, 661 (1992). The court, in finding this factor neutral, took into account the GAL's considerations and that Jane wanted to move to be with her fiancé, but it also noted that Jane had not visited Summerlin until recently, had no experience raising a family in the area, did not have a job offer in Nevada, and had purchased a residence in Summerlin before resolving the issue regarding relocation.

¶ 29        It is not unreasonable, based on its reasoning and considerations, for the court to find this factor neutral. Jane argues that the court finding this factor neutral was "not fair," but the record does not indicate anything "unfair" about the court's reasoning. The court carefully considered several pieces of information and came to a well-reasoned conclusion as to this factor. As such, we do not find that categorizing the first factor as neutral was against the manifest weight of the evidence.

¶ 30                              B. Educational Opportunities

¶ 31        With regard to the fourth factor, educational opportunities, Jane argues that the court's decision that this slightly favored James was against the manifest weight of the evidence, again because it disagreed with the GAL's opinion on the factor. Jane also argues that the court finding this without any discussion was manifestly erroneous given the evidence presented at the hearing. However, this is factually incorrect. The court did indeed discuss this factor, finding that it was slightly in James's favor due to the length of time that the children had been enrolled in

9

their current schools. Further, the GAL merely found the two school systems "comparable," which the court also noted. We will not find the court's decision was incorrect simply because it disagreed with the GAL or because it did not explain its reasoning as thoroughly as Jane may have wished. The court's reasoning, though short, shows that it considered all the factors that the GAL considered as well as the children's history in their current schools, and it does not amount to a manifestly erroneous finding.

¶ 32  C. Whether the Court Can Fashion a Reasonable Allocation of Parental Responsibilities

¶ 33  Jane also argues that the seventh factor, whether the court can fashion a reasonable allocation of parental responsibilities, should have been found in her favor. Instead, the court found that this factor weighed slightly in favor of James. Jane once again argues that the court made this finding without explaining itself, but this is simply untrue. While Jane is correct that an "unexplained failure" to weigh the evidence may result in a reversal, she has not demonstrated what evidence the court failed to consider.

¶ 34  In fact, the record establishes that the court took into account several considerations when ruling on this factor. The court stated that, in addition to all the evidence it heard during the hearing, it also considered the travel and distance when considering this factor. Specifically, the court stated, "I have to consider the time on the round trip back and forth from Illinois to Nevada. I have to consider how those trips would work out for these children, I have to consider the totality of the circumstances in getting to and from, I have to consider the amount of time that they will spend here versus there." The circuit court determined that this factor weighed against relocation only "slightly."

¶ 35  D. Arrangements for the Exercise of Parental Responsibility

¶ 36        As for factor nine, arrangements for the exercise of parenting responsibilities, the GAL opined that it weighed in Jane's favor. He stated that the technology of Zoom, FaceTime, and WhatsApp were helpful in minimizing the difficulties in being able to parent from a distance. While not perfect, a long-distance move was not completely detrimental. The court made no specific findings as to this factor and simply stated that it found it neutral.

¶ 37        Jane argues that the court did not make any specific findings regarding this factor, but it is not required to do so. See *In re Marriage of Hefer*, 282 Ill. App. 3d 73, 79 (1996). "The fact that the court did not list specifically the impact *** does not mean the court did not consider it." *In re Marriage of Berk*, 215 Ill. App. 3d 459, 464 (1991). Given the court's reasonable and thorough explanation of everything it considered when weighing every other factor, we cannot say that the court failed to weigh all the relevant evidence for this factor as well. The record demonstrates that the court did indeed consider what it believed was relevant when reaching its decision.

¶ 38                            E. Impact on the Parent-Child Relationship

¶ 39        Regarding the tenth factor, Jane argues that the court placed improper weight on it, as the statute does not prioritize the weight of certain factors over others. She argues that by prioritizing this factor and emphasizing that the structure of the parenting time would need to change if the children relocated, the court essentially found that nothing could replace James's parenting time, creating an "impermissible veto" with this factor.

¶ 40        Here, the court found factor ten, the ability to minimize the impact on the parent-child relationship, to be neutral, rather than in favor of relocation, as the GAL recommended. In so finding, the court stated that it considered the schedules of all the parties and whether James would still be able to have the regular contact he did with the children. It considered that

11

relocation would impact James's ability to participate in schoolwork, coaching, and extra-curricular activities. The court "must not only evaluate the quantitative change in visitation but must also carefully assess the qualitative difference in visitation." *In re Marriage of Collingbourne*, 204 Ill. 2d 498, 533 (2003). Thus, "a proposed visitation schedule which provides a noncustodial parent with the same number of visitation days as under the prior visitation arrangement does not automatically lead to the conclusion that the quality of the visitation between the child and the noncustodial parent will also be the same." *Id.* Based on the record and the court's considerations, we do not agree with Jane's position and find that it was not unreasonable to find this factor neutral.

¶ 41    Further, while the court noted that it found this factor to be a "threshold issue," there is no indication here that the court placed too much weight on it. A court may balance the statutory factors as it sees necessary due to the particular facts of each case. See *id.* at 524. It is plain from the court's careful explanation of all the factors and by the multitude of evidence it stated it considered for each one, that the court measured them all carefully and did not place inappropriate weight on any one consideration.

¶ 42                              F. Other Relevant Considerations

¶ 43    Last, Jane argues that, while the court did not explicitly state how it was choosing to categorize the eleventh catchall factor, it should have found that it weighed in favor of relocation. Here, the court stated that it considered many things that could not be categorized under any of the other statutory factors. It considered Belkin's divorce and the amount of time spent with his own children, the fact that the children could later be added to a private health insurance plan when Belkin and Jane married, the resources of both parties, James's girlfriend's desire not to relocate, and the parties' employment situations. While the court did not explicitly

12

state which "side" this factor weighed in favor of, it is not required to do so. The court must only consider all relevant considerations when making its decision; something the court very clearly did in this case.

¶ 44                                              III. CONCLUSION

¶ 45        On appeal, Jane has essentially asked this court to reweigh every statutory factor that the circuit court determined was not in her favor. We may not reweigh any factor and must only determine whether the circuit court's decision was unreasonable or if the opposite conclusion is clearly warranted. See *In re P.D.*, 2017 IL App (2d) 170355, ¶ 19. While Jane may not agree with the court's findings, she has presented us with no evidence that indicates that the court's findings on these factors were clearly erroneous or that a manifest injustice has occurred in this case. On the contrary, we find the court's decision to be well-reasoned and thoughtfully explained.

¶ 46        We therefore conclude that the circuit court clearly considered all the factors, as well as the evidence and testimony touching on each, and weighed them properly. Its ultimate determination was more than adequately supported by the record. The circuit court conducted a thorough analysis of the cause before it, in accordance with the requirements of the statute. We cannot say that the evidence presented does not support the court's findings and therefore will not disturb its findings.

¶ 47        The judgment of the circuit court of Du Page County is affirmed.

¶ 48        Affirmed.